IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Wesley S. Mullinax, Billy Wesley Owen Addis, William D. Smith, Jr., and John T. Cox, all individually and on behalf of all other similarly situated individuals,<br><br>    Plaintiffs,<br><br>vs.<br><br>Parker Sewer & Fire Subdistrict,<br><br>    Defendant. | Civil Action No. 6:12-cv-01405-TMC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO APPROVE ATTORNEY'S FEES AND COSTS** |

### I. Introduction

Plaintiffs, Wesley S. Mullinax, Billy Wesley Owen Addis, William D. Smith, Jr., and John T. Cox, all individually and on behalf of all other similarly situated individuals, by and through their undersigned attorney, hereby file this Memorandum of Law in Support of Plaintiffs' Motion to Approve Attorney's Fees and Costs. For the reasons set forth below, Plaintiffs respectfully request that the Court apportion $90,000.00, or thirty percent (30%) of the gross settlement amount of $300,000.00 in this case as attorney's fees and $5,500.00 as reimbursement of costs advanced by Plaintiffs' counsel.

### II. Statement of Case

This is an action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 et seq. to recover unpaid overtime compensation and compensation for "off the clock" work Plaintiffs earned during their employment with the Parker Fire Department. The parties have reached a proposed settlement of this action after

two mediation session on February 6, 2013 and March 1, 2013, which settlement is presently before the Court for approval. The gross amount of the proposed settlement is $300,000.00, which was intended to cover all of Defendant's liability to the opt-in Plaintiffs under the FLSA, as well as to all class members under the South Carolina Payment of Wages Act in this case, including liability for attorney's fees and costs through the date of the settlement agreement. Plaintiffs propose to apportion the settlement amount as follows: $90,000.00 for attorneys' fees; $5,500.00 for reimbursement of costs; $15,000.00 total for service or incentive payments to the named Plaintiffs and the members of the Plaintiffs' Steering Committee; and the remaining settlement proceeds of $189,500.00 to be paid to opt-in Plaintiffs based on their pro-rata share of the potential value of the collective group's back-pay claims.

### III. Statement of Facts

Plaintiffs' counsel handled this matter on a contingency basis, pursuant to written fee agreements with the named Plaintiffs as class representatives, as required by Rule 1.5(c) of the South Carolina Rules of Professional Conduct, SCACR 407, Rule 1.5(c). The Contingent Fee Agreements signed by the four named Plaintiffs and Plaintiffs' counsel provide for an attorney's fee amount equal to one-third of any (including settlement or arbitration). See Contingent Fee Agreements of Plaintiffs, Mullinax, Addis, Smith, and Cox (attached hereto as Exhibit A). Although Plaintiffs' counsel does not have written fee agreements with all of the opt-in Plaintiffs, the Consent to Join Lawsuit forms whereby each person opted in to the case, contain the following language: "As a current or former employee of Parker Sewer & Fire Subdistrict, I hereby consent, agree, and opt-in to become a party plaintiff herein and to be bound by any settlement of this action or adjudication of the Court. . . . I hereby further authorize the named Plaintiffs herein to retain their counsel of

record or to select new counsel, as they shall determine in their discretion, and I hereby further authorize such counsel to make all decisions with respect to the conduct and handling of this action, including the settlement thereof, as they deem appropriate or necessary, subject to the approval of the Court." See Consent to Join Lawsuit form, ¶¶ 7, 9 (sample copy attached hereto as Exhibit B).

The Contingent Fee Agreement also requires the named Plaintiffs to reimburse Plaintiffs' counsel for any costs advanced in connection with the case:

> Client is responsible for all out-of-pocket costs incurred in the processing of this case. To the extent that such costs are directly attributable to one Client, those costs will be apportioned to that particular Client. Costs that are common to all Clients will be apportioned equally to each Client on a pro-rata basis. Law firm will bill Client for these costs on a monthly basis, and Client agrees to reimburse Law firm for all out-of-pocket expenses within ten (10) days of billing. Law firm will advance the initial out-of-pocket expenses of the suit; however, if the total out-of-pocket expenses exceed One thousand dollars ($1,000.00), Law firm may require Client, and Client agrees, to deposit the sum of Five hundred dollars ($500.00) into Law firm's trust account against which such costs will be billed. Client is responsible for the payment of all out-of-pocket costs even if no recovery is obtained. Law firm will advance all costs directly attributable to the class action portion of the lawsuit, including providing notice to potential class members, in the event that the Court does not order such expenses to be paid by Defendant Employer.

(Exhibit A).

The undersigned counsel for Plaintiffs handled this case as sole counsel of record. The undesigned has been involved in this case since on or about May 22, 2012, when he was retained by the group of lead Plaintiffs. During the year and a half that this case has been pending, Plaintiffs' counsel he has devoted approximately 275 hours of attorney time to the case and has expended over $4,900.00 in costs to date. See Affidavit of David E. Rothstein, ¶¶ 15, 16 (attached hereto as Exhibit C). Detailed summaries of Plaintiffs' counsel's time entries and costs are attached to the Affidavit. In addition, Plaintiffs' counsel's legal assistant has spent approximately 45 hours of time in

connection with the case.

### IV. Discussion

Attorney's fees in class action cases under Rule 23, Fed. R. Civ. P., as well as collective actions under FLSA, are subject to court approval. Rule 23(h) provides, in relevant part, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Both the FLSA and the South Carolina Payment of Wages Act contain fee-shifting provisions. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); S.C. Code Ann. § 41-10-80(C) ("In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."). The gross settlement amount in this case of $300,000.00 was intended by the parties to include Defendant's liability for attorney's fees and costs with regard to the claims of the opt-in Plaintiffs.

There are two general methods for assessing awards of attorney's fees in class action cases: (1) the percentage-of-the-fund method and (2) the lodestar method. The percentage-of-the-fund method, also known as the common-fund doctrine, allows attorney's fees to be based on a percentage of the total recovery to the plaintiff class. See Boeing Co. V. Van Gemert, 444 U.S. 472, 478 (1980). The common fund doctrine recognizes that where a group of individuals receives a benefit from litigation without directly contributing to its costs, the group would be unjustly enriched unless each member is required to contribute a portion of the benefits to compensate the attorneys responsible for creating or enhancing the common fund. The trend among most courts seems to be towards

4

favoring the percentage-of-the-fund approach to awarding attorney's fees in class action cases, because it "better aligns the interests of class counsel and class members . . . [by] t[ying] the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." Kay Co. v. Equitable Production Co., 749 F. Supp. 2d 455, 461 (S.D. W. Va. 2010). The percentage-of-the-fund approach rewards counsel for efficiently and effectively bringing a class action case to a resolution, rather than prolonging the case in the hopes of artificially increasing the number of hours worked on the case. Id. at 462.

The lodestar method determines the appropriate amount of attorney's fees by applying the well-established factors from the seminal case of Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), to determine a "lodestar" figure by multiplying the number of hours expended by class counsel times a reasonable hourly rate. See Local Civil Rule 54.02(A), D.S.C. The loadstar method is used to award attorney's fees to successful plaintiffs after obtaining a judgment at trial in a fee-shifting case. See Hensley v. Eckerhart, 461 U.S. 424 (1983).

Many courts that have used the percentage-of-the-fund method have also used a modified form of the lodestar method to perform a "cross-check" to ensure that the percentage award is fair and reasonable. The Fourth Circuit has not issued any definitive guidance about which methodology is preferred for awarding or approving attorney's fees in class action cases. Kay Co., 749 F. Supp. 2d at 463. District Courts have considerable discretion in evaluating the reasonableness of an attorney's fee award. Id. Numerous district courts within the Fourth Circuit have used the percentage of the fund method, and many have also employed the lodestar cross-check, in setting attorney's fees in class action settlements. See id. at 463-64, nn. 3-4 (citing cases); Domonoske v. Bank of America, N.A., 790 F. Supp. 2d 466 (W.D. Va. 2011) (approving attorney's fees of 18% of

5

common-fund in FCRA class action, amounting to $1.791 million of $9.95 million common fund); Smith v. Krispy Kreme Doughnut Corp., 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) (approving attorney's fees of 26% of common fund in ERISA class action, amounting to $1.235 million of $4.75 million cash common fund) (unpublished decision attached). This court has used the percentage-of-the-fund framework with a modified lodestar cross-check in approving attorney's fees in a large class action under the FCRA. Clark v. Experian Info. Solutions, Inc., C/A No. 8:00-cv-1217-CMC (D.S.C. Apr. 21, 2004) (Dkt. No. 365).

### A. Percentage of Fund

The undersigned Plaintiffs' counsel requests that the Court use the percentage-of-the-fund method for approving attorney's fees in this case and award thirty percent (30%) of the gross settlement fund, or $90,000.00 of the $300,000.00 total settlement, to Plaintiffs' counsel.

In evaluating the reasonableness of attorney's fees under the common-fund doctrine in class action cases, courts generally examine the following factors: "(1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy." Kay Co., 749 F. Supp. 2d at 464; see also In re Cendant Corp. Prides Litig., 243 F.3d 722, 733 (3d Cir. 2001). Application of these factors demonstrates that Plaintiffs' counsel's request for thirty percent of the gross settlement proceeds for attorney's fees is fair and reasonable.

### 1. Result Obtained for the Class

Plaintiffs have achieved substantial victory on behalf of the class with the proposed settlement of $300,000.00. As discussed in connection with the motion to approve the settlement, the proposed settlement enables all opt-in Plaintiffs to receive a substantial percentage of their back-

pay amount under their FLSA claim, after payment of attorney's fees, costs, and service payments to the members of the Plaintiffs' Steering Committee. In Plaintiffs' counsel's experience, the proposed settlement of $300,000.00 is substantial for a South Carolina employer with a class size of over ninety class members and thirty-three opt-in Plaintiffs to date.

The case of Roy v. Lexington County, South Carolina, 141 F.3d 533 (4th Cir. 1998), which involved many issues similar to those presented in this case, included approximately 65 plaintiffs according to the caption of the case. After trial and referral of the case to a special master for calculation of damages, the district court entered judgment for back pay and prejudgment interest in the total amount of $136,044.10. Id. at 538.

The proposed settlement of this case is an outstanding result for the Plaintiff class.

## 2. Quality, Skill and Efficiency of Attorney Involved

This case was handled solely by the undersigned counsel, who is a solo practitioner in Greenville, South Carolina. Plaintiffs' counsel's qualifications are recited in the Affidavit of David E. Rothstein attached hereto. In summary, the undersigned graduated from law school with honors and clerked for two prominent federal judges prior to entering private practice. Since entering private practice, the undersigned has practiced extensively in the area of employment litigation and has written and taught CLEs on numerous employment-law topics. Plaintiffs' counsel has been a Certified Specialist in Employment and Labor Law since 2006. (Exhibit C, ¶ 9).

With respect to the undersigned's reputation, noted South Carolina employment law attorney M. Malissa Burnette, Esq. has offered a favorable opinion about the undersigned's abilities and reputation with respect to employment litigation. Affidavit of M. Malissa Burnette, Esq. (Attached hereto as Exhibit D). Greenville attorney W. Andrew Arnold, who is also an experienced and well-

7

respected employment lawyer in South Carolina, has also offered an unsworn declaration supporting the Plaintiffs' Motion to Approve Attorney's Fees. Unsworn Declaration of W. Andrew Arnold, Esq. (attached hereto as Exhibit E).

Lead Plaintiff, Wesley S. Mullinax, previously submitted an affidavit in support of the motion to approve the settlement agreement in which he attests that he has been satisfied with the legal services performed by the undersigned, and that he supports the requested allocation for attorney's fees and costs. Mullinax Aff., ¶¶ 8-9 (Exhibit C to Consent Motion to Approve Settlement) (Dkt. No. 33).

Plaintiffs' counsel's quality, skill, and efficiency support the requested attorney's fees.

### 3. Complexity and Duration of Case

This case was fairly complex, involving several technical aspects of the FLSA and the accompanying regulations. The case has been pending since May 25, 2012. During the approximately twenty months that this case has been pending, Plaintiffs' counsel has expended considerable effort in prosecuting this action. (Exhibit C, ¶¶ 13-15). This factor amply supports the requested attorney's fees.

### 4. Risk of Non-payment

Plaintiffs' counsel agreed to handle the case on a contingency fee basis. As in any case, there is always a risk that the plaintiff will not recover a verdict or might recover a verdict less than the full amount of damages sought. The contingency nature of the fee agreement puts a substantial risk of loss on Plaintiffs' counsel, because he does not get paid unless he is successful in obtaining some recovery in the case on behalf of Plaintiffs.

Here, Defendant denied in its Answer that it had violated the FLSA or the South Carolina

Payment of Wages Act. Only after substantial discovery did Defendant acknowledge that some aspects of its previous pay plan for Defendant's Fire Department might give rise to liability under the FLSA and the South Carolina Payment of Wages Act.

With regard to the ability of Defendant to respond to a potential judgment in this case, because Defendant is a public body, there is less risk of non-payment than with most private employers. However, Plaintiffs' counsel is aware of recent news reports, especially in light of the poor economy of the past few years, where city and county governments across the country have been unable to meet their financial obligations. In addition, during settlement negotiations, representatives of Parker Sewer & Fire Subdistrict asserted substantial budgetary concerns that would be exacerbated by continued litigation and which could have led to lay-offs, furloughs, or reductions in compensation or benefits for employees of Defendant's Fire Department.

Accordingly, the risk of non-payment appears not to be a significant factor either way in the Court's assessment of the attorney's fees requested in this case.

### 5. Awards in Similar Cases

One-third of the recovery is a fairly common percentage in contingency cases, especially where the total settlement amount is not so large as to produce a windfall to the plaintiffs' attorneys based solely on the number of class members. In Clark v. Ecolab, Inc., 2010 WL 1948198 (S.D.N.Y. May 11, 2010) (copy of unpublished decision attached), the court noted that an attorney's fee percentage of one-third is "reasonable and 'consistent with the norms of class litigation in [the Second] circuit." Id. at *8. The Clark court approved attorney's fees of $2 million or one-third of the common fund, in a collective action under the FLSA. Id.; see also Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D. 669, 677 (S.D. Iowa 2009) (approving attorney's fees of 33 1/3% of total

9

settlement fund of $6.7 million, plus $150,000 in costs, in FLSA collective action on behalf of class approximately 11,400 convenience store employees).

Similarly, in Smith v. Krispy Kreme Doughnut Corp., 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) (copy of unpublished decision attached), the Court noted, "In this jurisdiction, contingent fees of one-third (33.3%) are common." Id. at *2. The Smith court approved a 26% fee in that case under the lodestar cross-check method, which produced a risk multiplier of 1.6 over the lodestar amount. Plaintiffs' counsel in the Smith case reported 1089 hours of attorney time and 772 hours of paralegal time, and the court approved a fee of $1,235,000 out of the common fund of $4.75 million cash value of the settlement. Id. at * 2-3.

In Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (unpublished decision attached), the court cited to cases from district courts throughout the country in common fund cases where attorney's fee awards "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund." Id. at *21. Most of the cases cited by the Bredbenner court awarded attorney's fees at the level of 33.3% of the common fund. Id. The court in Bredbenner approved the requested fees and costs in the amount of $990,000 out of a $3,000,000 total settlement amount, which produced a lodestar multiplier of 1.88. Id. at *18, 22.

The case of Hoffman v. First Student, Inc., 2010 WL 1176641 (D. Md. Mar. 23, 2010) (copy of unpublished decision attached), also approved an attorney fee award of one-third of the total class recovery. Id. at *3 ("Under the FLSA and the terms of the lead class members' Agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award. Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, the fees and costs requested are reasonable and appropriate.").

Ms. Burnette testifies in her affidavit that a one-third contingency fee percentage is reasonable and customary in employment cases. (Exhibit D, ¶ 6). Mr. Arnold's Declaration also confirms the customary nature of a one-third contingency fee percentage. (Exhibit E, ¶ 7).

### 6. Objections

The named Plaintiffs' contingency fee agreements with the undersigned counsel provide for a one-third recovery. (Exhibit A). Although the Court is not bound by the parties' agreements in this regard, the amount is reasonable and fair in light of the relatively small size of the Plaintiff class and the amount of work required by the case. Furthermore, as discussed above, Plaintiff Mullinax submitted an affidavit supporting the proposed attorney's fee payment. Plaintiffs' counsel is confident that he would be able to rebut any objections to the attorney fee payment if such objections are made by any members of the Plaintiff class prior to the fairness hearing in this case.

### 7. Public Policy

In the undersigned counsel's experience, employment cases are not eagerly sought out by the majority of the plaintiffs' bar in South Carolina, because of the difficulty of the cases and the complexity of the issues usually involved. In situations like this case, where each individual's economic damages may be relatively modest and where the employee victims usually do not have the resources to pay substantial attorney's fees and costs in advance, obtaining counsel would be extremely difficult were it not for the statutory provisions for attorney's fees and costs for prevailing parties. Therefore, public policy favors adequate awards of attorney's fees in cases under the FLSA to encourage aggrieved plaintiffs to bring these actions and to provide incentives for plaintiffs' counsel to take such cases. Plaintiffs' counsel is not aware of any other public policy concerns raised by this motion.

## B. Lodestar Cross-check

Many courts that employ the common-fund doctrine in evaluating attorney's fee requests under class settlements compare the percentage of the fund to the lodestar calculation to ensure that the percentage amount is fair and reasonable. The lodestar is defined as "the number of hours reasonably expended, multiplied by a reasonable hourly rate." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). In fee-shifting cases, this amount is generally considered the presumptively reasonable fee in a case that is successfully litigated to judgment. See Alexander S. v. Boyd, 929 F. Supp. 925, 932 (D.S.C. 1995), aff'd mem. 89 F.3d 827 (4th Cir. 1996). The lodestar figure may be adjusted upward or downward to account for exceptional circumstances, such as the results obtained or the quality of the representation. Id.

The standard for determining a reasonable figure for attorney's fees is set forth in the familiar Fourth Circuit case of Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978); see Local Civil Rule 54.02, D.S.C. (expressly incorporating the Barber v. Kimbrell's, Inc. factors):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) this skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber, 577 F.2d at 226, n.28. The Barber factors are discussed in order below, although many of them overlap with the previous discussion about the fairness of the percentage-of-the-fund method.

**1.  Time and labor expended**

As set forth in the Affidavit of David E. Rothstein, which is attached hereto as Exhibit C, Plaintiffs' firm has expended approximately 275 hours of attorney time in connection with this matter.  Plaintiffs' counsel anticipates spending an additional 20-30 hours of time after January 14, 2014, in connection with the settlement approval hearing and ensuring that the settlement proceeds are distributed properly.  Plaintiffs' legal assistant has also spent approximately 45 hours of time in connection with this case.

The undersigned attorney began representing Plaintiffs in late May 2012.  This case involved significant discovery, including defending the depositions of the four named Plaintiffs, taking three depositions of Defendant's representatives, and reviewing and analyzing thousands of pages of documents, including individual entries on time and payroll records.  Plaintiffs' counsel also worked very closely with the Plaintiffs' Steering Committee.  Although no dispositive motions were filed in the case, the work involved in reviewing Defendant's payroll records and performing calculations of overtime due was substantial and tedious.

As set forth in the Ms. Burnette's Affidavit,  the amount of time and labor expended in this case is reasonable.  (Exhibit D, ¶¶ 5-6).  Mr. Arnold's Declaration corroborates that the time involved in this case is appropriate and reasonable. (Exhibit E, ¶¶ 6, 8).

**2.  Novelty and Difficulty of the Questions Raised**

As the Court is aware, overtime cases under the Fair Labor Standards Act can be very complex and difficult, involving the interaction among various statutes, regulations, and evolving case-law.  The difficulty of this case is appropriately reflected in the hours and time entries submitted by Plaintiffs' counsel.

### 3. Skill Required to Perform the Legal Services Rendered

Because of the difficulty of this case as discussed above, a high degree of skill was required to perform the legal services rendered in this matter. Employment law is currently perhaps one of the most dynamic areas of the law, requiring counsel to stay abreast of developments in both state and federal law. Moreover, as with any litigation in federal court, attorneys in overtime cases must be thoroughly familiar with developments and changes in the Federal Rules of Civil Procedure and the Local Civil Rules of this District.

### 4. Attorney's Opportunity Costs in Pressing the Instant Litigation

As summarized in the time sheets attached to the undersigned's Affidavit, this case has approximately 275 attorney hours to date. (Exhibit C, ¶ 15). This time commitment represents a significant opportunity cost in terms of other cases, either hourly or contingency, on which the undersigned could have worked over the past 20 months. In addition, Plaintiffs' counsel has advanced all of the costs of this litigation, since Plaintiffs did not have the ability to pay the costs associated with this case.

### 5. Customary Fee for Like Work

A one-third contingency fee is actually below the contingency arrangement that Plaintiffs' counsel usually reaches with his clients in individual employment matters in which a lawsuit is filed. Plaintiffs' counsel is very selective about what cases he takes on a contingency agreement, but he usually charges 40% of any recovery after a lawsuit is actually filed.

The Affidavit of Ms. Burnette demonstrates that a one-third contingency fee is reasonable and customary in employment cases in South Carolina. (Exhibit D, ¶ 6).

With regard to an hourly rate for purposes of the lodestar cross-check framework, the

undersigned's standard hourly rate in non-contingency employment matters is $300.00. Plaintiffs' counsel usually seeks an increase over his normal hourly rate to account for the risk of accepting employment cases like this one on a contingency basis and to compensate him for the beneficial results obtained. (Exhibit C, ¶ 19).

Generally, the hourly rate included in an attorney fee calculation should be the "prevailing market rates in the relevant community." Rum Creek Coal Sales, 31 F.3d at 175. As set forth in the Affidavit of Ms. Burnette and the Declaration of Mr. Arnold, the requested amount of attorney's fees rate is well within the market rate for experienced employment lawyers in South Carolina. (Exhibit D, ¶ 6); (Exhibit E, ¶¶ 7-8).

### 6. Attorney's Expectations at the Outset of the Litigation

Plaintiffs' counsel accepted this case on a contingency basis, with the understanding that if Plaintiffs prevailed at trial, the Court would make an award of fees pursuant to the FLSA. Plaintiffs and their counsel agreed that the attorney's fees would be the greater of one-third of the total recovery or the court-awarded fees.

### 7. Time Limitations Imposed by the Client or Circumstances

The time required by the circumstances of this case are discussed in connection with items 1 and 4 above. No time other limitations were imposed by the clients.

### 8. Amount in Controversy and Results Obtained

The Fourth Circuit has acknowledged that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). Plaintiffs enjoyed significant success in this matter and were able to hold Defendant accountable for Defendant's

unlawful pay practices within the Fire Department. In summary, the results obtained on Plaintiffs' behalf in this case amply support the request for attorney's fees and costs.

### 9. Experience, Reputation, and Ability of Attorney

This factor is discussed above in connection with section entitled Quality, Skill and Efficiency of Attorney Involved.

### 10. Undesirability of the Case Within the Legal Community in Which the Suit Arose

This factor is also discussed above in connection with the Public Policy section.

### 11. Nature and Length of the Professional Relationship Between Attorney and Client

The undersigned has represented Plaintiffs for approximately thirty months during the course of this litigation. This is the first matter for which the undersigned has provided any legal services to any of the named Plaintiffs, so this factor appears not have any application in this Motion.

### 12. Attorneys' Fee Awards in Similar Cases

The attorney's fees and costs requested by Plaintiffs are in line with awards in other employment cases in the District of South Carolina. Plaintiffs' counsel's most recent attorney fee approval in the District of South Carolina in a FLSA case was the case of <u>Anna C. DeWitt et al. v. Darlington County, South Carolina</u>, C/A No. 4:11-cv-00740-RBH. On December 6, 2013, the Hon. R. Bryan Harwell approved a one-third contingency fee of $75,000.00 on a gross settlement amount of $225,000, which equated to an effective hourly rate of approximately $395.00 per hour for the undersigned counsel in a collective action under the FLSA on behalf of 30 opt-in plaintiffs. (Dkt. No. 60). In March 2012, in another hybrid class/collective action under the FLSA and the SC Payment of Wages Act, the Hon. Cameron M. Currie approved a one-third contingency fee of $500,000 on a gross settlement amount of $1.5 million, which equated to an effective hourly rate of

16

approximately $410.00 per hour for the undersigned counsel. Kevin Faile et al. v. Lancaster County, South Carolina, C/A No. 0:10-cv-2809-CMC. (Dkt. No. 102, March 8, 2012).  In 2011 in another case under the FLSA, the Hon. Richard M. Gergel awarded the undersigned counsel attorney's fees at the rate of $350.00 per hour.  George et al. v. Pro Med Ambulance Service, LLC, C/A No. 2:10-cv-00087-RMG (D.S.C. Oct. 20, 2011) (Dkt. No. 50).  On June 13, 2011, the Hon. J. Michelle Childs awarded attorneys' fees to Brian P. Murphy and John S. Nichols at the rate of $300.00 per hour in a successful race discrimination case.  Banks v. Allied Crawford Greenville, Inc. et al., C/A No. 6:09-cv-01337-JMC.   Although both Mr. Murphy and Mr. Nichols are experienced and well-respected trial counsel, neither is a Certified Specialist in Employment and Labor Law.  Other similar awards in employment cases in South Carolina include the following: Rosetti v. World Group Mortgage, LLC, 2005-CP-23-00550 (Greenville County Ct. of Common Pleas) ($300.00 per hour); Miller v. HSBC Fin. Corp., 3:08-cv-01942-MJP, 2010 WL 2722689 (D.S.C. July 9, 2010) ($290.00 per hour); Harrison-Belk v. Rockhaven Community Care Home, 3:07-54-CMC, 2008 WL 2952442 (D.S.C. July 29, 2008) ($290.00 per hour), aff'd sub. nom Harrison-Belk v. Barnes, 319 Fed. Appx. 277 (4th Cir. 2009).

     Using a rate of $350.00 per hour for the 274.8 hours the undesigned Plaintiffs' counsel has expended on the case to date, plus an estimated 20 hours of additional work yet to be performed, would yield a lodestar amount of $103,180.00  which is actually greater than the $90,000.00 figure requested under the 30% contingency amount.  Even at Plaintiffs' counsel's regular hourly rate of $300.00 per hour, the loadstar amount would be $88,440.00, for a risk multiplier of 1.02 times the lodestar amount, which is well within the range of reasonable attorney's fee amounts in common fund cases.  See Kay Co., 749 F. Supp. 2d at 470 ("Courts have generally held that lodestar

17

multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."). The Kay court approved a requested fee amount that produced a lodestar multiplier between 3.4 to 4.3 times the lodestar amount. Id.; see also Smith v. Krispy Kreme Doughnut Corp., 2007 WL 119157, at *3 (using lodestar cross-check and approving multiplier of 1.6 times above the lodestar amount).

### V.  Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that the Court approve attorney's fees of $90,000.00 to Plaintiffs' counsel based on thirty-percent (30%) of the total gross settlement amount of the common fund of the Plaintiff class. In addition, Plaintiffs respectfully request that the Court approve reimbursement of $5,500.00 in costs to be paid from the settlement fund.

Respectfully submitted,

 s/ David E. Rothstein
David E. Rothstein, Fed. ID No. 6695
ROTHSTEIN LAW FIRM, PA
514 Pettigru Street
Greenville, South Carolina 29601
(864) 232-5870 (O)
(864) 241-1386 (Facsimile)
derothstein@mindspring.com

Attorney for Plaintiffs

January 14, 2014

Greenville, South Carolina.