<u>Mullinax et al. v. Parker Sewer & Fire Subdistrict</u>
C/A No. 6:12-cv-01405-TMC

<u>Unpublished Decisions</u>

(1)    <u>Bredbenner v. Liberty Travel, Inc.</u>, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)

(2)    <u>Clark v. Ecolab, Inc.</u>, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)

(3)    <u>Hoffman v. First Student, Inc.</u>, 2010 WL 1176641 (D. Md. Mar. 23, 2010)

(4)    <u>Smith v. Krispy Kreme Doughnut Corp.</u>, 2007 WL 119157 (M.D.N.C.  Jan. 10, 2007)

2011 WL 1344745
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

Deanna BREDBENNER, Paul Gilbert, and Belinda
Serrano, both individually and on behalf of
all other similarly situated persons, Plaintiffs,
v.

LIBERTY TRAVEL, INC., Defendant.
Carol Connell, William Krumpholz, Corrine
Orchin, Nicole Reid, and Leigh Anne Hubbs,
both individually and on behalf of all
other similarly situated persons, Plaintiffs,
v.

Liberty Travel, Inc., Flight Centre USA, Inc., Gilbert
Haroche, and Michelle Kassner, Defendants.

Civil Action Nos. 09–905 (MF), 09–
1248(MF), 09–4587(MF). | April 8, 2011.

**Attorneys and Law Firms**

Patrick Joseph Monaghan, Jr., Monaghan, Monaghan, Lamb
& Marchisio, Montvale, NJ, for Plaintiff.

Michael T. Grosso, Littler Mendelson, P.C., Newark, NJ, for
Defendants.

**Opinion**

*OPINION*

FALK, United States Magistrate Judge.

**\*1** This case and the companion actions described below
arise from a series of complaints initiated against Liberty
Travel, Inc. by former employees for unpaid overtime. On
July 9, 2010, the parties reached a global settlement in
principle. The Court provisionally certified a settlement
class and granted preliminarily approval of the class action
settlement on November 19, 2010. CM/ECF No. 97. Presently
before the Court are three related motions seeking (a) final
certification of the settlement class; (b) final approval of
the class action settlement; (c) approval of the collective
action settlement; (d) attorneys' fees and costs; and (e) service
payments for named Plaintiffs. CM/ ECF Nos. 98, 102, 105.
A fairness hearing was held on March 14, 2011. CM/ECF No.

113. For the reasons set forth below, Plaintiffs' motions are
**granted** in their entirety.

*I. BACKGROUND*

Defendant Liberty Travel, Inc. ("Liberty") operates a network
of retail stores throughout the country that offer travel
services (Answer ¶¶ 2, 29). The company employs travel
agents to service its customers (*Id.* ¶ 2). Travel agents as
part of their job description are required to work in excess
of forty (40) hours as the position may demand (Pls.' Brief
in Supp. of Mot. to Certify a FLSA Action Attach. 3, Ex.
3 ("Employment Agmt.") ¶ 2.2 [CM/ECF No. 15]; *see also*
Decl. of Michael J.D. Sweeney in Supp. of Pls.' Renewed
Mot. for Expansion of the FLSA Collective Action Class
("Aug. 28, 2009, Sweeney Decl.") Ex. D, at 25 ("There will
be times when you will need to work overtime....") [CM/ECF
No. 53] ). Plaintiffs are generally a group of former Liberty
employees that worked as travel agents in the Northeastern
United States.

*A. Compensation Scheme for Liberty Travel Agents*

Travel agents working for Liberty are compensated through
a mix of weekly base pay, commissions, bonuses, and
overtime for hours worked in excess of forty (40) per week
(Employment Agmt. ¶¶ 3.1–3.4; Aug. 28, 2009, Sweeney
Decl. Ex. A ("Joint Stip."), at 1). Overtime pay specifically
is calculated using a formula that is appended to Liberty's
form employment agreement as Exhibit A (Employment
Agmt. ¶¶ 3.2; Joint Stip. 1). Employees eligible for overtime
receive one-half (1/2) their effective hourly rate, derived
from a composite of their weekly base pay and the total
number of hours worked that week, for each overtime hour
(Employment Agmt. Ex. A; Joint Stip. 1). The employment
contract also specifies that their compensation scheme would
"convert" to a fixed hourly rate once the employee exhausts
all previously allocated personal time for each hour that
they work under forty (40) in any given week (Employment
Agmt. ¶ 3.3; Joint Stip. 1). Liberty apparently changed to a
different payment model at some point in September 2008
(Pls.' Brief in Supp. of Mot. to Certify a FLSA Action Attach.
3 ("Fiorenzo Decl.") ¶ 12 [CM/ECF No. 15] ).

*B. Summary of Claims*

**\*2** Plaintiffs in these matters maintain that the formula used
by Liberty to calculate overtime establishes a "diminishing"
pay structure (Compl.¶ 2). Because the overtime rate of
pay is not fixed and instead dependent on the sum total of

hours accumulated each week, they argue that overtime pay progressively decreases as the number of hours spent working overtime increases (*Id.*). Liberty contends that it properly paid overtime under applicable law by using the widely-accepted "fluctuating work week" ("FWW") method to determine the amount of overtime due to each employee (Def .'s Brief in Opp. to Pls.' Mot. to Certify FLSA Representative Action and to Issue Notice 11–13). *See* 29 C.F.R. § 778.114 (Department of Labor interpretive rule codifying Supreme Court jurisprudence on the FWW approach to overtime); *see also Urnikis–Negro v. Am. Family Prop. Serv.,* 616 F.3d 665, 673 (7th Cir.2010) (discussing background and construction of § 778.114); *Hunter v. Sprint Corp.,* 453 F.Supp.2d 44, 55 (D.D.C.2006) (same).

### C. Procedural History

Plaintiffs initially brought suit against Liberty and its parent company, Flight Centre USA, Inc., in the U.S. District Court for the Southern District of New York under the caption *Reid v. Liberty Travel, Inc.* on November 17, 2008. That action was dismissed without prejudice to re-filing in the District of New Jersey for improper venue on February 20, 2009 (Decl. of Michael J.D. Sweeney in Sup. of Pls.' Mot. for Final Certification of the Settlement Class ("March 4, 2011, Sweeney Decl.") ¶ 1 [CM/ECF No. 100] ).

On February 27, 2009, Deanna Bredbenner, Paul Gilbert and Belinda Serrano filed this putative collective action against Liberty Travel, Inc. under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (2006), for unpaid overtime. CM/ECF No. 1. On March 19, 2009, Carol Connell, William Krumpholz, Corrine Orchin, and Nicole Reid, filed a class action on behalf of a putative class comprised of Maryland, Massachusetts, and New York residents, against Liberty, Flight Centre, and two high-ranking Liberty executives, Gilbert Haroche and Michelle Kassner, under state labor law for similar reasons. Docket No. 09–1248, CM/ECF No. 1. [1] The *Connell* complaint was amended to include a cause of action under 29 U.S.C. § 216(b) for violation of the overtime provisions of the FLSA. Docket No. 09–1248, CM/ECF No. 4. On September 4, 2009, Leigh Anne Hubbs filed suit against Liberty Travel, Inc., Flight Centre, Gilbert Haroche, and Michelle Kassner, under the FLSA and New Jersey wage and hour law, individually and on behalf of all others similarly situated. Docket No. 09–4587, CM/ECF No. 1.

[1]    All references to docket entries standing alone relate to submissions made in the lead *Bredbenner* case, and all references to docket entries preceded by a case number

relate to submissions made in the case assigned to that case number. For example, the above-noted reference indicates entry number one (1) on the *Connell* docket, which is assigned case number 09–1248.

Because many of the issues involved in the *Connell* case were similar to those raised in *Bredbenner,* the *Connell* action was stayed pending resolution of the legal issues in *Bredbenner* (Sept. 2 Order, at 3 [Docket No. 09–1248, CM/ECF No. 31] ). The Court ordered that "the final determination of those issues in *Bredbenner* will apply with equal force and effect to the FLSA claims in [*Connell* ]" (Sept. 2 Order, at 3). For similar reasons, the *Hubbs* case was consolidated and stayed with *Connell.* Docket No. 09–1248, CM/ECF No. 43. [2]

[2]    The *Hubbs* case, which at that point was consolidated with *Connell* ("*Hubbs/Connell*" ), was subsequently consolidated with *Bredbenner,* CM/ECF No. 82, but the Court later unconsolidated the *Hubbs/Connell* matter from *Bredbenner* and re-stayed the *Hubbs/Connell* action. CM/ECF No. 84. Thus, the cases were on the same procedural posture as they were before *Hubbs* was consolidated with *Bredbenner.*

**\*3**    Only July 31, 2009, the Honorable William J. Martini conditionally certified the FLSA claim in *Bredbenner* as a collective action for all persons employed by Liberty as a travel agent in Delaware, Maryland, and New York, between August 13, 2006, and September 1, 2008. *See Bredbenner v. Liberty Travel, Inc.,* No. 09–905, 2009 WL 2391279 (D.N.J. July 31, 2009); *see also White v. Rick Bus Co.,* 743 F.Supp.2d 380 (D.N.J.2010) (describing two-tiered approach to class certification of FLSA claims). In all, one hundred and forty-three (143) individuals eventually opted-in to the *Bredbenner* action, nine (9) opted-in to the *Connell* action, and two (2) opted-in to the *Hubbs* action (March 4, 2011, Sweeney Decl. ¶¶ 6, 14, 16).

### D. Joint Statement of Facts and Discovery

Prior to entering settlement negotiations, the parties had conducted an extensive investigation into the underlying claims. The parties represent that they recognized that liability could likely be resolved on summary judgment and both sides were amenable to stipulating to certain core facts (March 4, 2011 Sweeney Decl. ¶ 9). Beginning in July 2009, they worked together on crafting a joint statement of facts pursuant to Local Civil Rule 56.1 (*Id.*). Discovery proceeded on disputed matters.

As part of discovery, Plaintiffs' counsel received and analyzed a large amount of electronic discovery (*Id.* ¶ 19). In January 2010, Defendant deposed each of the named parties, and Plaintiffs held a 30(b)(6) deposition of Defendant (*Id.* ¶ 10). Plaintiffs also noticed other depositions as well, (*Id.* ¶ 11), and filed a motion to compel further discovery, CM/ECF No. 90. Plaintiffs also informally interviewed several putative class members and opt-in plaintiffs to gather additional information (March 4, 2011 Sweeney Decl. ¶ 19). The parties also had the benefit of previously-obtained discovery from a distinct lawsuit against Liberty that involved twenty-nine (29) depositions, dispositive motion practice, and trial decisions (*Id.* ¶ 19).

### E. Settlement Negotiations

The Court held in-person settlement conferences on five separate occasions since February of 2010. *See* CM/ECF Nos. 80, 83, 86–88. After nearly six months of negotiations, and numerous settlement conferences, the parties reached a global settlement in principle on July 9, 2010, that resolves all claims in each of the pending overtime suits (March 4, 2011 Sweeney Decl. ¶ 21). The Court oversaw the negotiation process (*Id.* ¶ 62). The salient terms of the settlement were memorialized on the record on July 9, 2010. *See* CM/ ECF No. 94.

### F. Terms of Settlement

The settlement agreement creates a common fund of $ 3,000,000 for: (1) settlement payments as consideration for the release of all class claims; (2) attorneys' fees for class counsel; (3) enhancements or "service payments" for class representatives; (4) payroll taxes associated with the settlement; and (5) claims administration expenses (Pls.' Mot. for Prelim. Approval of Class Settlement and Other Relief Ex. A ("Settlement Agmt.") § III.B.1 [CM/ECF No. 96] ). It contemplates the prospective certification of a state law settlement class (*Id.* § II.OO). Workers eligible to receive a payout under the settlement include all named plaintiffs, all state law class members who do not affirmatively opt-out, and all class members who affirmatively opted-in to one of the FLSA actions (*Id.* ¶ 11.00 (cross-referencing § II.N)).

**\*4** The common fund will be distributed in the first instance to qualifying class members, less their pro-rata share of attorneys' fees, and to satisfy any "service payments" approved by the Court (*Id.* § III.B.1.f-e). All class members who timely file a valid claim will receive one and a half (1.5) times their hourly rate, based on a forty (40) hour work week, for each overtime hour they worked during the class period

less overtime already paid to them by Liberty (*Id.* § II.S). All original opt-in plaintiffs will also receive a premium equal to twenty-five percent (25%) of their total overtime claim (*Id.* § II.S). The minimum payout is $50 (*Id.* § II.S). Fifty percent (50%) of the total payment will constitute wages, subject to income taxation, and the other fifty percent (50%) will constitute liquidated damages (*Id.* § III.B.1.c). The remaining money will be used to satisfy claims administration expenses and payroll taxes associated with the settlement payout (*Id.* § III.B.1.g). Finally, Liberty will retain any unused funds (*Id.* § III.B.1.g).

### G. Preliminary Approval and Notice

On November 19, 2010, the Court provisionally certified for purposes of settling the state law claims only, *see In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.,* 55 F.3d 768, 792 (3d Cir.), *cert. denied,* 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995) (discussing and approving use of settlement-only classes), a class consisting of all individuals who worked as full-time Liberty travel agents:

(1) in Maryland between March 19, 2006, and August 31, 2008;

(2) in Massachusetts between March 19, 2007, and August 31, 2008;

(3) in New Jersey between September 4, 2007, and August 31, 2008; and

(4) in New York between March 19, 2003, and August 31, 2008

(Nov. 19 Order ¶ 31 [CM/ECF No. 97] ). The Court also appointed Getman & Sweeney, PLLC as class counsel, preliminarily approved the class action settlement of state claims as fair, and approved the notice and claim forms used to apprise potential class members about the lawsuit and fairness hearing (*Id.* ¶¶ 21, 38, 41).

Following preliminary approval of the settlement class and the proposed settlement agreement, Liberty provided a list of possible class members to the claims administrator (Declaration of Bernella Lenhart in Supp. of Mot. for Final Approval of Class Action Settlement ("Lenhart Decl.") ¶ 2 [CM/ECF No. 101] ). A notice package was mailed out on December 3, 2010 (*Id.* ¶ 3). The notice contained information on the underlying claims in each case, the terms of the settlement, the period of time within which to file objections,

the ability to opt-out, and the date of the fairness hearing (*Id.* Ex. A "Settlement Notice")). Out of the one thousand two hundred and eighty-three (1,283) members that were mailed a package, five hundred and thirty two (536) returned a claim form to the claim administrator (Lenhart Decl. ¶¶ 2, 9). [3] Only six class members chose to opt-out of the settlement (*Id.* ¶ 10). The claims administrator received no objections whatsoever (*Id.* ¶ 11). The Court held a fairness hearing on Monday, March 14, 2011. *See* CM/ECF No. 113.

[3]  Of the returned forms, four (4) were postmarked after the deadline to file a valid claim and seven (7) contained various deficiencies (Lenhart Decl. ¶¶ 2, 9). The parties advised the Court that they would still treat the four (4) late filings as eligible under the settlement (Transcript of Mar. 14, 2011 Fairness Hearing ("Tr"), at 28:10–19 [CM/ECF No. 113] ). In addition, the Court ordered that all members who filed an inadequate claim form should be provided (10) additional days to cure any deficiencies in their previously filed form (Tr., at 28:5).

## II. DISCUSSION

### A. Certification of Settlement Class

**\*5**  In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). *See Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 55 (3d Cir.1994) (citing *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.3d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011 (1975)). Class certification calls for a "rigorous analysis" of the factual and legal allegations. *See Beck v. Maximus, Inc.,* 457 F.3d 291, 297 (3d Cir.2006) (quoting *Gen. Tele. Co. of Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.61[1] (3d ed.2008). The Court therefore may conduct a "preliminary inquiry" into the merits before it determines that the requirements for class certification are satisfied. *See In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 316–17 (3d Cir.2008) (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 168 (3d Cir.2001)).

A party that seeks to certify a settlement class must satisfy the same requirements necessary to maintain a litigation class. *In re Gen. Motors Corp.,* 55 F.3d at 778. The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Plaintiffs move under Rule 23(b)(3). The Court preliminarily found that the requirements of Rules 23(a) and 23(b)(3) were met. The Court now finds that all the requirements for class certifications are in fact satisfied.

### i. *Rule 23(a) of the Federal Rules of Civil Procedure*

A case may be certified as a class action under Rule 23 only when:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir.1984), *cert. denied,* 470 U.S. 1060 (1985). These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527 (3d Cir.2004).

### a. Numerosity

Rule 23(a)(1) requires that the size of the class is so large that joinder of all potential parties is impracticable. Impracticability does not mean impossibility. *Dewey v. Volkswagen of Am.,* 728 F.Supp.2d 546, 656 (D.N.J.2010). Rather, it means that joinder would be "extremely difficult or inconvenient." *Szczubelek v. Cendant Mortgage Corp.,* 215 F.R.D. 107, 116 (D.N.J.2003) (citing *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993)). While no minimum number is required, the Third Circuit has stated that numerosity is generally met where the moving party "demonstrates that the potential number of plaintiffs exceeds 40...." *Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir.2001) (citing 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed.1999)), *cert. denied,* 536 U.S. 958, 122 S.Ct. 2661, 153 L.Ed.2d 836 (2002). The Court should also take into account other factors, such as the geographic dispersion of the anticipated class. *See Osgood v. Harrah's Entm't, Inc.,* 202 F.R.D. 115, 122 (D.N.J.2001) (citing Herbert B. Newberg & Alba Conte, 1 *Newberg on Class Actions* (hereinafter *Newberg on Class Actions* ) § 3.06, at 3–27 (3d ed.1992)).

**\*6** The numerosity requirement is satisfied in this case. The class approved by this Court contains over 1,200 putative class members, at least 526 of which have expressed interest in participating in this litigation. The members of the class are dispersed throughout four different states and the sheer number of potential plaintiffs would make joinder impracticable. *See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.05, at 3–25 (4th ed.2002) (observing that classes "numbering in the hundreds" will alone satisfy numerosity); *see also NAACP v. N. Hudson Regional Fire & Rescue,* 255 F.R.D. 374, 382 (D.N.J.2009), *remanded on other grounds,* 367 Fed. Appx. 297 (3d Cir.2010) ("Even if all of the approximately 850 members of the proposed class here still live in Essex, Union or Southern Hudson County, joinder of over 800 additional plaintiffs would simply be impracticable.").

### b. Commonality

Next, Plaintiffs must demonstrate that there are questions of fact or law that are common to the members of the class. Fed.R.Civ.P. 23(a)(2). Commonality exists where the named plaintiffs share at least one question of fact or law with the grievances of the proposed class. *See In re Warfarin,* 391 F.3d at 527–28. Indeed, "Rule 23(a)(2) does not require that class members share every factual and legal predicate...." *In re Gen. Motors Corp. .,* 55 F.3d at 817. Thus, the commonality requirement is easily met in most cases because all that is required is one common issue. *Baby Neal,* 43 F.3d at 56.

Plaintiffs clearly meet the low commonality threshold. All class members worked over forty hours and allege that they did not receive a proper amount of overtime pay for that time. Factually, Liberty's overtime formula is central to the claims of all class members. Legally, the class would implicate the substantive law of four different states. However, the claims all class members will turn on whether the FWW method of calculating overtime is compatible with applicable state wage and hour laws. In particular a common question across all four sub-classes would be whether Liberty's compensation regime qualifies as a FWW payment model. Courts regularly find commonality in similar wage and hour suits in which class certification is sought. *See, e.g., Bernhard v. TD Bank, N.A.,* No. 08–4392, 2009 WL 3233541, at \*3 (D.N.J. Oct.5, 2009); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.,* No. 06–3202, 2009 WL 2137224, at \*4 (E.D.Pa. July 16, 2009); *Lenahan v. Sears Roebuck and Co.,* No. 02–0045, 2006 WL 2085282, at \*7 (D.N.J. July 24, 2006).

### c. Typicality

The claims of the representatives must also be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3). The Third Circuit recently identified three interrelated considerations relevant to this inquiry: "(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 599 (3d Cir.2009). This component of Rule 23 is designed to ensure that "the [class representatives] will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions* (*Prudential II* ). 148 F.3d 283, 311 (3d Cir.1998) (citing *Baby Neal,* 43 F.3d at 57), *cert. denied,* 525 U .S. 1114 (1999).

**\*7** The typicality prong does not require that all putative class members share identical claims or underlying facts. *See Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 141 (3d Cir.1998), *cert. denied* 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999). All that is required is a strong similarity in legal theories or a showing that the claims arise from the same course of conduct. *See Prudential II,* 148 F.3d at 311–12; *Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123 (3d Cir.1987) (citing 1 *Newberg on Class Actions* § 3.15, at 168 (2d ed.1985)), *abrogated in part on other grounds by Reed v. United Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989).

All class members allege that they were improperly compensated as a result of Liberty's overtime compensation formula. The injury sustained by the class representatives is the same as the injury sustained by the class as a whole. They seek same relief as all putative class members. Because the class representatives challenge the same underlying conduct as do all members in the putative class, the interests of the class representatives are completely aligned with the interests of the entire class. *See Newton,* 259 F.3d at 183–84 ("If the claims of the named plaintiffs and putative class members involve the same conduct by defendant, typicality is established regardless of factual differences."). Moreover, the named Plaintiffs are subject to the same overarching FWW

defense as are all class members. The claims of the class representatives are therefore typical of the absentees.

#### d. Adequacy of Representation

Adequate representation focuses on two criteria: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel,* 508 F.2d at 247. These distinct inquiries assess the adequacy of class counsel and the adequacy named plaintiffs, respectively, to represent the rest of the class. *See Prudential II,* 148 F.3d at 312; *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 630 (3d Cir.1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Plaintiffs clearly meet both of these prongs.

First, class counsel is comprised of competent and experienced class action attorneys that are readily capable of prosecuting Plaintiffs' claims. Class counsel is highly experienced in wage-and-hour litigation (March 4, 2011, Sweeney Decl. ¶¶ 58, 63). In fact, they are involved in nineteen (19) pending federal and state wage-and-hour cases (*Id.* ¶ 58). The Court observes that class counsel have competently and vigorously pursued the interests of the class throughout the litigation. For example, class counsel undertook a private investigation to identify potential class members, proposed a draft statement of stipulated facts to reduce costs, and efficiently reviewed a tremendous amount of electronic discovery to help evaluate the case.

 **\*8** Second, there are no conflicts between class representatives and other class members. The second prong serves to uncover conflicts of interest between the named parties and the class they seek to represent. *See Amchem,* 521 U.S. at 626 n. 20 (citing *Falcon,* 457 U.S. at 157–58 n. 13). Indeed, the absence of collusion or undue pressure assumes a "crucial" role in the context of settlement class certification. *See In re Gen. Motors Corp.,* 55 F.3d at 799 n. 21. Plaintiffs must prove the same wrongdoing as the absent class members in order to establish liability in this matter. The named Plaintiffs held identical positions while employed by Liberty and allege the same harm as other Plaintiffs (March 4, 2011, Sweeney Decl. ¶ 57). Further, the settlement allocation formula poses no conflict because damages are calculated in the same way for the named Plaintiffs as for all other class members (Settlement Agmt. § II.S). *See Lenahan,* 2006 WL 2085282, at *8. Given the absence of any conflict, and the

stellar qualifications of class counsel, the Court finds that the adequacy requirement is easily met.

In light of the foregoing, the class plainly satisfies each of the four prerequisites to class certification contained in Rule 23(a). The Court therefore now turns to Rule 23(b)(3).

#### ii. *Rule 23(b)(3) of the Federal Rules of Civil Procedure*

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *See, e.g., In re Constar Int'l, Inc. Sec. Litig.,* 585 F.3d 774, 780 (3d Cir.2009).

#### a. Predominance

Predominance probes whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *See Amchem,* 521 U.S. at 623 (citing 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1777, at 518–19 (2d ed.1986)). Although it tends to merge with the concept of commonality, it imposes a more exacting standard. *See Newton,* 259 F.3d at 186. To establish predominance, issues common to the class must predominate over individual issues. *Prudential II,* 148 F.3d at 313–14. Common issues do not "predominate," and the case in inappropriate for certification, if "proof of the essential elements of a cause of action require individual treatment." *Newton,* 259 F.3d at 172 (citing *Binder v. Gillespie,* 184 F.3d 1059, 1063–66 (9th Cir.1999), *cert. denied,* 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000)). Whether an element requires individual or common treatment depends nature of the evidence that will suffice to resolve it. *See In re Hydrogen Peroxide,* 552 F.3d at 311 (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir.2005)). When an issue requires both individual and common proofs, the Court must determine which proof is key to its outcome. *See In re Lineboard,* 305 F.3d at 162–163. Indeed, the presence of some individual issues "does not *per se* rule out a finding of predominance." *Prudential II,* 148 F.3d at 315.

 **\*9** Liberty's overtime formula was applied uniformly to all class members in these cases. Plaintiffs contend that it violated applicable state law and Liberty claims that it did not. Whether Liberty's formula was compatible with state

wage and hour law is "about the most perfect question[ ] for class treatment." *Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y.2007). This issue is clearly susceptible to class-wide proof. Whether the formula itself violated the law is the central issue in these cases and would determine Liberty's liability. Factual differences between class members, such as their base salary and their amount of unpaid overtime, are incidental matters that only impact damages. The Third Circuit has cautioned that "obstacles in calculating damages may not preclude class certification." *Newton,* 259 F.3d at 189. Where, as here, "common issues which determine liability predominate," calculating damages on an individual basis does not prevent an otherwise valid certification. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977) (citations omitted); *see also In re Community Bank of N. Va.,* 418 F.3d 277, 306–07 (3d Cir.2005); *In re Lineboard,* 305 F.3d at 163.

Differences in the substantive state laws at issue will similarly pose no obstacle. Normally, a court must determine whether variances in applicable state law may be so substantial as to defeat predominance. *See In re LifeUSA Holding Inc.,* 242 F.3d 136, 147 (3d Cir.2001); *Prudential II,* 148 F.3d at 315; *Georgine,* 83 F.3d at 627; *In re Sch. Asbestos Litig.,* 789 F.2d 996, 1010 (3d Cir.1986). However, variations in state laws are "irrelevant" when a case will come to fruition with the certification of a settlement class. *See In re Warfarin,* 391 F.3d at 529 (citing *Amchem,* 521 U.S. at 620). Thus, issues common to the class predominate over individual issues.

### b. Superiority

The non-exhaustive list of factors that a court may consider in evaluating the superiority of a class action include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3). This prong of Rule 23(b)(3) asks the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine,* 83 F.3d at 632 (quoting *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 757 (3d Cir.) (en

banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974)).

A class action in New Jersey is the "superior" method of adjudicating this controversy. First, the relatively modest size of each individual claim counsels that independent actions would likely be impracticable. *See Georgine,* 83 F.3d at 633 (citing Fed.R.Civ.P. 23(b)(3) advisory note to 1966 amendment). The class action procedure would serve to spread the costs of litigation across a greater pool of injured parties, *In re Gen. Motors,* 55 F.3d at 783–84, and the total amount of potential liability is not so significant as to impose "hydraulic pressure" on Liberty to settle in the face of marginal claims. *See Newton,* 259 F.3d at 167 n. 8 (citing *In re Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293 (7th Cir.), *cert. denied,* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995)). Any potential interest in maintaining individual actions is further diminished by the fact that there are no other pending lawsuits arising from the same allegations beyond those involved in the settlement. *See In re Warfarin,* 391 F.3d at 534 (citing *Prudential II,* 138 F.3d at 316). Second, New Jersey is also the most appropriate forum for the class. A forum selection clause found in the employment contract of each class member limits the disposition of their claim to the jurisdiction of New Jersey (Employment Agmt. ¶¶ 3.1). Concentrating litigation in New Jersey is also desirable because it is home to Liberty's corporate headquarters. *See In re Warfarin,* 391 F.3d at 534 (citing *Prudential II,* 138 F.3d at 316). Finally, the class consists of a fully-matured set of claims; the class itself closed at the point in time when Liberty stopped using the overtime formula at issue in this case. *See Newton,* 259 F.3d at 192. The class action mechanism is both fair and efficient in these cases.

**\*10** Having determined that the class satisfies each of the requirements of Rule 23(a) and Rule 23(b)(3), final certification of the settlement class is warranted.

### B. Final Approval of the Class Action Settlement

Under Rule 23(e), the claims of a certified class may be settled only with the Court's approval. The Court acts in a protective capacity as fiduciary for absent class members by assuring that the settlement terms are "fair, reasonable, and adequate" in exchange for the release of the class claims. Fed.R.Civ.P. 23(e)(2); *see In re Gen. Motors Corp.,* 55 F.3d at 805. The Court must "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re Gen. Motors Corp.,* 55

*Bredbenner v. Liberty Travel, Inc., Slip Copy (2011)*

F.3d at 785 (quoting *2 Newberg on Class Actions* § 11.41, at 11–88 (3d ed.1992)). Where settlement negotiations precede class certification, and settlement and class certification are sought simultaneously, the Court must be "even more scrupulous" than usual to safeguard against abuses. *Id.* at 805. This "heightened standard" is intended to ensure that the class counsel has engaged in sustained advocacy throughout the proceedings and protected the interests of all putative class members. *See Prudential II,* 148 F.3d at 317. The fairness determination is ultimately committed to the sound discretion of the Court. *Bryan v. Pittsburg Plate Glass Co.,* 494 F.2d 799, 801 (3d Cir.).

For the reasons that follow, the settlement is entitled to a presumption of fairness and is fair, reasonable, and adequate for purposes of Rule 23(e).

### i. Presumption of Fairness

A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors,* 55 F.3d at 785 (citing *2 Newberg on Class Actions* § 11.41 at 11–88 (3d ed.1992)); *Manual for Complex Litigation (Third )* § 30.42, at 238 (1997). This presumption may attach even where, as here, settlement negotiations precede class certification. *See In re Warfarin,* 391 F.3d at 535.

The settlement here clearly satisfies these criteria. The class settlement was the product of nearly six months of negotiations between highly experienced counsel, and after years of discovery, investigation, legal analysis, and motion practice. In addition, not one class member objected to the terms of the settlement agreement and only six affirmatively opted-out. This alone should be enough for the presumption of fairness to attach. *See McCoy v. Health Net, Inc.,* 569 F.Supp.2d 448, 458–59 (D.N.J.2008); *Varacallo v. Ma. Mut. Life Ins. Co.,* 226 F.R.D. 207, 235 (D.N.J.2005). In addition, the Court directly oversaw the negotiations during which the settlement was reached. Participation of an independent mediator in settlement negotiations "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.,* No. 02–467, 2008 WL 4693747 (S.D.Ohio Oct.23, 2008) (internal citations omitted); *see also Milliron v. T–Mobile USA, Inc.,* No. 08–4149, 2009 WL 3345762, at *5 (D.N.J. Sept.14, 2009) (finding presumption applies when negotiations occurred before federal judge); *In re LG / Zenith Rear Projection Tel.*

*Class Action Litig.,* No. 06–5609, 2009 WL 455513, at *6 (D.N.J. Feb.18, 2009) (same).

### ii. Fairness of the Class Settlement

**\*11** In *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975), the Third Circuit identified nine factors that a court should consider in evaluating whether a proposed class action settlement is "fair, reasonable, and adequate." The nine *Girsh* factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 516–17 (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974)). However, due to the "sea-change" in the way class actions have evolved since *Girsh* was decided, the Third Circuit has instructed courts to address other concerns as they may arise in each case:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential II,* 148 F.3d at 324. These set of considerations embody a substantive inquiry into the terms of the settlement itself and a procedural inquiry into the negotiation process. *In re Prudential Ins. Co. of Am. Sales Practice Litig.* (*Prudential I* ), 962 F.Supp. 450 (D.N.J.1997) (citing *In re Gen. Motors,* 55 F.3d 796).

### a. Complexity, Expense, and Duration of Litigation

This factor is intended to "capture 'the probable cost, in both time and money, of continued litigation.' " *In re Gen. Motors,* 55 F.3d at 812 (quoting *Bryan,* 494 F.2d at 801). Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement. *Prudential I,* 962 F.Supp. at 536.

If this action were to continue, the parties would expend considerable time and money pursuing their claims. For start, these cases involve claims that arise under several state and federal statutes. While the differences in substantive law are not unmanageable, *supra,* it would undoubtedly make the process of litigation complex. *See In re Gen. Motors,* 55 F.3d at 812 (finding complexity arising from a "web of state and federal warranty, tort, and consumer protection claims"). The previously-litigated action against Liberty Travel in Pennsylvania spanned over thirteen (13) years and was extremely adversarial. Here, the parties would be forced to confront fairly technical legal issues regarding the FWW overtime model to prevail on the merits. Continued prosecution of this case both before and at trial would therefore require extensive involvement by experts. Heavy dispositive motion practice would be a certainty. The expected factual and legal issues at trial are complex. Based on the history of the Pennsylvania action, an appeal would likely follow. By reaching a settlement prior to the time for dispositive motions, the parties "avoid[ ] the costs and risks of a lengthy and complex trial." *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 595 (3d Cir.2010). Since continued litigation would be time-consuming and expensive, settlement makes consummate sense.

### b. Reaction of the Class to Settlement

 **\*12** The second factor seeks to gauge whether members of the class actually support the settlement. *Prudential II,* 148 F.3d at 318. Courts generally assume that silence constitutes "tacit consent" to the settlement terms. *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1314 n. 15 (3d Cir.1993) (citing *Shlensky v. Dorsey,* 574 F.2d 131, 148 (3d Cir.1978)). Thus, courts looks to the "number and vociferousness of the objectors." *In re Gen. Motors,* 55 F.3d at 812.

Here, not one single member from the class objected to the terms of the settlement, and less than one percent of the class opted out. While this type of response weighs in clear favor of the settlement, *Weber v. Gov't Emp. Ins. Co.,* 262 F.R.D. 431, 445 (D.N.J.2009); *In re Cendant Corp., Derivative Action*

*Litig.,* 232 F.Supp.2d 327, 333–34 (D.N.J.2002), the Third Circuit has cautioned that the inference of silent approval may be unwarranted in cases where the settlement and class action notice are sent in tandem. This is because class members are not in a position to weigh the relative strengths and weaknesses of the settlement terms. *See In re Gen. Motors,* 55 F.3d at 812–13. While mindful of this admonition, the inference of approval is still warranted in this case. Unlike *General Motors,* the notice that was mailed out to potential class members included a clear and informative summary about the claims in each of the underlying cases, placing potential class members in a better position to judge the terms of the settlement agreement. The class reaction strongly supports the settlement.

### c. Stage of the Proceedings and Amount of Discovery Completed

This factor considers the degree of case development accomplished by counsel prior to settlement. *See In re Gen. Motors,* 55 F.3d at 813. For the proceedings to be sufficiently developed to foster a fair settlement, the parties must have "an adequate appreciation of the merits of the case before negotiating." *Id.* Courts therefore endeavor into "the type and amount of discovery the parties have undertaken." *Prudential II,* 148 F.3d at 319. In general, post-discovery settlements are more likely to be fair and reflective of the true value of the claims in the case. *See Bolger,* 2 F.3d at 1314.

The parties entered the settlement armed with much discovery. Over the course of one year, initial disclosures were exchanged, a tremendous volume of documents were produced, and the depositions of all named parties were taken. Plaintiffs' counsel also informally interviewed potential class members, and coordinated with defense counsel to draft a joint stipulation of facts. Numerous conferences addressing discovery and case management were conducted by the Court. The parties were also aided in substantial part by discovery already gained from prior litigation, which involved over twenty-nine (29) depositions, dispositive motions, and an appeal. The Third Circuit has explicitly recognized that discovery in a parallel proceeding can be beneficial to settlement negotiations. *See In re Gen. Motors,* 55 F.3d at 813 (citations omitted).

 **\*13** This case settled just sixty (60) days before the close of fact discovery. CM/ECF No. 89. Thus, both parties were in an excellent position to enter negotiations based on their unique knowledge of the underlying facts. *See In re Cendant Corp. Litig.,* 264 F.3d at 236 (finding appreciation for merits despite

settlement at an early stage of discovery). With extensive discovery and due diligence, class counsel clearly possessed sufficient information to assess the relative strengths and weaknesses of their case and reach a fair bargain. The stage of proceedings factor thus weighs in favor of approving the settlement.

### d. Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors survey the "possible risks of litigation" by balancing the likelihood of success, and the potential damages award, against the immediate benefits offered by settlement. *Prudential II,* 148 F.3d at 319. Where the risks of litigation are high, these factors weigh in favor of the settlement. *See id.* Because damages are contingent on establishing liability, "the same concerns animate both of these elements." *McCoy,* 569 F.Supp.2d at 461. To properly weigh these considerations, the Court should not press into the merits of the case and instead rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case. *See Dewey v. Volkswagen of Am.,* 728 F.Supp.2d 546, 584 (D.N.J.2010) (citing *In re Ikon Office Solutions, Inc. Sec. Litig.,* 209 F.R.D. 94, 105–06 (E.D.Pa.2002)); *Weber,* 262 F.R.D. at 445 (quoting *Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 115 (E.D.Pa.2005)). The immediate cash payout provided by the class settlement offers a substantial benefit over the many risks and costs Plaintiffs would face in litigating their claims to a conclusion.

First, it is not clear that Plaintiffs could maintain their state claims for unpaid overtime alongside the federal causes of action under the FLSA. In *De Asencio v. Tyson Foods,* 342 F.3d 301, 309 (3d Cir.2003), the Third Circuit directed courts to analyze, on a case-by-case basis, whether the joinder of state law overtime claims with a claim under the FLSA is a proper exercise of supplemental jurisdiction. Where state law issues "substantially predominate," the state claims may be dismissed without prejudice for resolution by state tribunals. *Id.* (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

Second, even assuming the state law claims could remain, Plaintiffs' ability to succeed on those claims depends on whether the FWW method of overtime pay provides a sufficient defense under state law. This determination would have to be made with respect to each state law involved. For those states that embrace the FWW approach to overtime pay, Plaintiffs would need to establish that Liberty's overtime formula was not a proper application of the FWW method.

**\*14** Third, any issues that survived summary judgment would go to trial before a jury. A trial on the merits always entails considerable risk. *Weiss v. Mercedes–Benz of N. Am., Inc.,* 899 F.Supp. 1297, 1301 (D.N.J.1995). This is particularly true here, given the technical nature of the FWW method and the need to rely on expert testimony. *See In re Cendant Corp.,* 264 F.3d at 239 (recognizing the increased risk of establishing liability when a jury is presented with competing expert testimony).

Finally, even if Plaintiffs were to succeed on the merits, the quantum of damages that they could collect is also uncertain. For example, under the FLSA a party may collect on three years of back pay, instead of the two year default, only if they can prove that the opposing party acted willfully. *See, e.g., Pignataro v. Port Auth. of N.Y. and N.J.,* 593 F.3d 265, 273 (3d Cir.2010); *Brock v. Claridge Hotel and Casino,* 846 F.3d 180, 188 (3d Cir.), *cert. denied,* 488 U.S. 925 (1988). Throughout, Defendants could be expected to continue their zealous defense and would likely appeal if plaintiffs prevailed. In the fact of such considerable risks, an immediate cash settlement provides certainty and offers a significant benefit to all class members.

### e. Risks of Maintaining the Class Action Through Trial

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin,* 391 F.3d at 538. This factor is important because the prospects for obtaining certification impact the range of recovery that a party can reap from the action. *In re Gen. Motors,* 55 F.3d at 817.

The Court has found that class certification is appropriate for purposes of settlement, and suspects the result would be the same for a litigation class. However, Liberty would strenuously contest certification if the case were to proceed (March 4, 2011, Sweeney Decl. ¶¶ 70, 72). Confronted with a motion to certify a litigation class, instead of a settlement class, the Court would additionally need to consider whether the case would pose intractable management problems. *See Amchem,* 521 U.S. at 620. It is also possible that Liberty would seek an interlocutory appeal of any order granting class certification. *See* Fed.R.Civ.P. 23(f). In addition, class certification can always be modified at any time before final judgment. Fed.R.Civ.P. 23(c)(1)(C). All in all, the risk of decertification is small. However, this is not an obstacle to approval. The Third Circuit cast some doubt on how "significant" this factor is in cases where a settlement class is sought, *Prudential II,* 148 F.3d at 321, and some courts

in this district have discredited the importance of this factor in settlement-only classes, *e.g.*, *In re Schering–Plough/Merck Merger Litig.*, No. 09–1099, 2010 WL 1257722, at \*11 (D.N.J. March 26, 2010).

### f. Ability of Defendant to Withstand a Greater Judgment

**\*15** This factor "is concerned with the whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant Corp.*, 264 F.3d at 240. The Court is not in a position to determine whether Liberty could withstand a greater judgment than the substantive settlement. However, a settlement amount greater than the payouts provided under the settlement would likely be difficult to attain given that they are largely based on figures from payroll records. This factor therefore does not favor or disfavor settlement. *See In re Warfarin*, 391 F.3d at 538 ("[T]he fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached."). Indeed, courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts. *See, e.g.*, *McCoy*, 569 F.Supp.2d at 462–63; *Weber*, 262 F.R.D. at 446; *Varacallo*, 226 F.R.D. at 239.

### g. Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation

The final two *Girsh* factors collectively "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. To make this determination, the Court analyzes the reasonableness of the settlement against the best possible recovery and the risks the parties would face if the case went to trial. *Prudential II*, 148 F.3d at 322. In cases where monetary relief is sought, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Gen. Motors*, 55 F.3d at 806 (quoting *Manual for Complex Litigation (Second)* § 30.44, at 252 (1985)). Precise value determinations, however, are not necessary. *In re Pet Food Prods. Liability Litig.*, 629 F.3d 333, 355 (3d Cir.2010) (citing *In re Warfarin*, 391 F.3d at 538).

These factors likewise weigh in favor of approving the settlement. The settlement establishes a fund of $3 million to compensate class members for unpaid overtime. Each state law class member will receive a payout dependent on the number of overtime hours that they worked. The total amount each class member receives should put them in roughly the same position as if they received one and a half times their hourly rate for each overtime hour worked. In other words, the settlement payout basically restores each class member to where they would have been had Liberty paid overtime at one and one half times each employee's regular rate. Compensating the class members at close to one hundred percent (100%) of their alleged actual damage "obviously represents a good value for the class members' claims, and is well within the range of reasonableness." *Weber*, 262 F.R.D. at 447.

**\*16** Plaintiffs acknowledge that recovery "could be greater" if they prevailed on all claims at trial. Plaintiffs do seek liquidated damages under some of the state law claims involved. But winning on any claim is far from certain and hitting a grand slam would be unlikely. Plaintiffs would face considerable risk were the case to proceed. Defendants have certain credible defenses and strongly presented them. The settlement, on the other hand, offers an immediate and substantial benefit given the significant risks of litigation. *See Varacallo*, 226 F.R.D. at 240. In short, the recovery of each class member under the settlement "exceeds the value of the best possible recovery discounted by the risks of litigation." *Prudential I*, 962 F.Supp. at 540.

### h. Additional Factors

Several additional factors identified by the Third Circuit in *Prudential*, 148 F.3d at 323, also counsel in favor of approving the settlement. The underlying substantive issues are fully matured for adjudication given that Liberty ceased using the disputed method of overtime pay in August of 2008, which is when the state classes close. In addition, the parties were guided by extensive discovery that was obtained in the prior Liberty litigation. *See McCoy*, 569 F.Supp.2d at 469. Class counsel are highly qualified and experienced in wage and hour class action litigation and consider the terms of the settlement to be fair, reasonable, and adequate. *See Varacallo*, 226 F.R.D. at 240 (citing *Prudential I*, 962 F.Supp. at 543). Finally, the settlement was premised on Liberty payroll records. *See McCoy*, 569 F.Supp.2d at 469.

After careful consideration of the *Girsh* factors, and the presumption of fairness, the Court concludes that the substantive terms of the settlement are eminently fair and that the negotiation process was unassailable. The majority of the *Girsh* factors, and several additional considerations, strongly favor approval. The settlement provides a significant

benefit to all class members, which is substantiated by the overwhelmingly positive response from the class. Accordingly, the Court approves the terms of the settlement that resolve the state law class claims.

### C. Approval of the Collective Action Settlement

Plaintiffs also ask the Court to approve the balance of the settlement agreement that resolves the collective action claims under the FLSA. Previously, the Court conditionally certified an FLSA class. *See* CM/ECF No. 41. Courts in this district, however, use a two-stage procedure to certify classes under the FLSA. *See, e.g., White,* 743 F.Supp.2d at 383; *Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 497 (D.N.J.2000). [4] The Court must therefore reach a final determination as to the FLSA class before addressing the terms of the settlement. *See Burkholder v. City of Ft. Wayne,* —— F.Supp.2d ——, 2010 WL 4457310, at *2 (N.D.Ind.2010) (collecting cases); *Vasquez v. Coast Valley Roofing, Inc.,* 670 F.Supp.2d 1114, 1124 (E.D.Cal.2009) ("Subject to final approval at a later date, conditional certification of a settlement class under the FLSA is appropriate.").

[4]   The two stages consist of a preliminary or "conditional" certification and then, after notice issues and pertinent discovery is obtained, a "reconsideration" phase during which the Court will either grant final certification or decertify the class. *See Ruehl v. Viacom, Inc.,* 500 F.3d 375, 388 n. 17 (3d Cir.2007) (recognizing use of two-tier certification process in ADEA collective action that incorporates section 16(b) of the FLSA). *See generally* 7B Charles Alan Wright et al., *Federal Practice & Procedure* § 1805, at 487 (3d ed.2005) (hereinafter *Federal Practice & Procedure* ).

### i. Final Class Certification Under the FLSA

**\*17**  To certify a case as a collective action under the FLSA, the Court must determine that employees in the class are "similarly situated," within the meaning of § 16(b) of the Act. *See Sperling v. Hoffman–La Roche, Inc.,* 862 F.2d 439, 444 (3d Cir.1888), *aff'd,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Morisky,* 111 F.Supp.2d at 496. Courts impose a stricter standard for final class certification than they do for conditional certification because the factual record is more fully developed. *See Morisky,* 111 F.Supp.2d at 497 (citing *Thiessen v. Gen. Elec. Capital Corp.,* 996 F.Supp. 1071, 1080 (D.Kan.1998)); 7B *Federal Practice & Procedure* § 1805, at 497. In *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43 (3d Cir.1989), the Third Circuit tacitly endorsed the factors

identified in *Plummer v. General Electric Co.,* 93 F.R.D. 311 (E.D.Pa.1981), and *Lusardi v. Xerox Corp.* (*Lusardi I* ), 118 F.R.D. 351 (D.N.J.1987) to make this determination. It explicitly approved a "balancing" of these factors in a later decision. *See Ruehl,* 500 F.3d at 388 n. 17 ("[W]e have approved of the balancing of factors in *Plummer* and *Lusardi."* (citing *Lockhart,* 879 F.2d at 51)). Courts in this district regularly use the *Lusardi* factors to reach a final determination on class certification under the FLSA. *See, e.g., Aquilino v. Home Depot, U.S.A., Inc.,* No. 04–4100, 2011 WL 564039, at *5 (D.N.J. Feb.15, 2011); *Zavala v. Wal– Mart Stores, Inc.,* No. 03–5309, 2010 WL 2652510, at *2 (D.N.J. June 25, 2010). They include "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Lusardi I,* 118 F.R.D. at 359, *vacated in part sub nom. Lusardi v. Lechner* (*Lusardi II* ), 855 F.2d 1062 (3d Cir.1988). This list is neither exhaustive nor mandatory to grant certification. *Ruehl,* 500 F.3d at 388 n. 17.

There is no doubt that the FLSA class should be certified. Because the analysis required for final certification, "largely overlap[s] with class certification analysis under Federal Rule of Civil Procedure 23(a)," the Court need only address the *Lusardi* factors in passing. *Murillo v. Pac. Gas & Elec. Co.,* No. 08–1974, 2010 WL 2889728, at *3 (E.D.Cal. July 21, 2010); *see also Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir.2001) (noting "there is little difference [between the two] approaches"). The factual circumstances underlying the claims of each putative class members are very similar, not disparate. Each held the same job, signed the same employment contract, worked overtime during the relevant class period, received overtime pay pursuant to a common formula, and each claims the same relief under the FLS A. The class as a whole is therefore "similarly situated" to the class representatives. Second, the Court cannot envision any individualized defenses that would interfere with final certification. In any case, the concern with individualized defenses is that they may pose case management problems. *See Ruehl,* 500 F.3d at 388. However, the Court need not account for case management issues because, much like the Rule 23 analysis, the class is being certified for purposes of settlement. *See Amchem,* 521 U.S. at 620.

### ii. Fairness of the Collective Action Settlement

**\*18**  Unlike a traditional class action under Rule 23, potential class members in an FLSA collective action must affirmatively opt-in to be bound by the judgment. *See Lusardi*

*II,* 855 F.2d at 1070. Their failure to do so does not prevent them from bringing their own suit at a later date. *Id.* (citing *Pentland v. Dravo Corp.,* 152 F.2d 851, 853 (1945)). This differs markedly from a class action instituted under Rule 23(b)(3). *See* 5 *Newberg on Class Actions* § 16.20 (noting tension between *res judicata* effect of FLSA collective action and Rule 23(b)(3) class action). Thus, the Court does not assume the same "fiduciary" role to protect absent class members as it would under Rule 23 when assessing a proposed settlement resolving FLSA claims.

To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir.1982); *see also* H.R.Rep. No. 101–664, at 18–19 (1990). In so doing, the Court ensures that the parties are not "negotiating around the clear FLSA requirements" via settlement. *Collins v. Sanderson Farms, Inc.,* 568 F.Supp.2d 714, 720 (E.D.La.2008). Its obligation "is not to act as caretaker but as gatekeeper." *Goudie v. Cable Commc'n, Inc.,* No. 08–507, 2009 WL 88336, at *1 (D.Or. Jan.12, 2009). As set forth above, the Court has detailed the reasons the settlement is fair.

The "bona fide dispute" requirement is not an issue here. The dispute between the parties centers on whether the overtime formula used by Liberty was compatible with the FLSA. Liberty argues that its formula provided proper overtime wages under the FWW approach to compensation. Plaintiffs on the other hand contend that they were entitled to more. A disagreements over "hours worked or compensation due" clearly establishes a bona fide dispute. *Hohnke v. United States,* 69 Fed. Cl. 170, 175 (Fed.Cl.2005). The institution of a federal court litigation followed aggressive prosecution and strenuous defense demonstrates the palpable bona fides of this dispute. *See Lynn's Food,* 679 F.2d at 1354; *see also D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 113 n. 8, 66 S.Ct. 925, 90 L.Ed. 1114 (1946). The settlement, which provides time and one half each employee's hourly rate, represents "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food,* 679 F.2d at 1354. Accordingly, the Court approves the portion of the settlement resolving the FLSA claims.

### D. Attorneys' Fees and Expenses

Class counsel also seeks an award of attorneys' fees and reimbursement of expenses in the amount of $990,000. This is a common fund case in which fees and costs come directly out of the recovery to the class. *See generally In re Cendant Corp. Litig.,* 264 F.3d at 256. More specifically, class counsel seeks $978,353.16 in fees and $11,646.84 in out-of-pocket expenses. These amounts represent 32.61% and .39%, respectively, of the common fund. The Court notes preliminarily that it has received not a single objection pertaining to the proposed amount of fees. *See Lenahan,* 2006 WL 2085282, at *19 ("The lack of significant objections from the Class supports the reasonableness of the fee request.").

**\*19** Courts in the Third Circuit employ the percentage-of-recovery method to award attorneys' fees in common fund cases. *See In re Gen. Motors,* 55 F.3d at 821 (citing *Court Awarded Attorney Fees,* 108 F.R.D. 237, 255 (1985) (hereinafter *Task Force Report* )); *see also Manual for Complex Litigation (Fourth )* § 14 .121, at 186 (2004). Indeed, it is the prevailing methodology used by courts in this Circuit for wage-and-hour cases. *See, e.g., In re Janney,* 2009 WL 2137224, at *14; *Chemi v. Champion Mortg.,* No. 05–1238, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009); *Lenahan,* 2006 WL 2085282, at *19. Under the percentage-of-recovery approach, the Court must determine whether the percentage of total recovery that the proposed award would allocate to attorneys fees is appropriate "based on the circumstances of the case." *In re Cendant Corp. Litig.,* 264 F.2d at 256. The Court is primarily guided by seven factors identified by the Third Circuit:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n. 1 (3d Cir.2000) (citations omitted); *see also In re AT & T Corp.,* 455 F.3d 160, 166 (3d Cir.2006) (noting that courts should also consider any other factors that are "useful and relevant" under the facts of each case) (citations omitted). Each case is different, however, and in some circumstances one single factor may outweigh the rest. *See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 301 (3d Cir.2005) (citing *Gunter,* 223 F.3d at 195 n. 1). In addition to the *Gunter* factors, the Third Circuit has suggested that courts "cross-check" its fee calculation against the lodestar award method. *Gunter,* 223 F.3d at 195 n. 1. Based on the reasons that follow,

the Court finds that the fees requested by Class Counsel are appropriate given the facts of this case.

### i. Size of Fund and Number of Persons Benefitted

As a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases. *See In re Cendant Corp. Prides Litig.,* 243 F.3d 722, 736 (3d Cir.2002) (citing *Task Force Report,* 108 F.R.D. at 256). The inverse relationship is predicated on the belief that increases in recovery are usually a result of the size of the class and not a result of the efforts of counsel. *See Prudential II,* 148 F.3d at 339 (quoting *In re First Fidelity Bancorp. Sec. Litig.,* 750 F.Supp. 160, 164 n. 1 (D.N.J.1990)). The settlement achieved in this case, while substantial, does not create a "mega-fund." *See In re Cendant Corp. Prides Litig.,* 243 F.3d at 736–37. Moreover, the results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. The common fund is substantial in that it creates a common fund of $3 million for over one thousand class members. Smaller common funds have been found significant for classes of roughly the same size in other wage-and-hour cases. *See, e.g., In re Janney,* 2009 WL 2137224, at *14 ($2.9 million for 1,310 class members); *Chemi,* 2009 WL 1470429, at *10 ($1.2 million for 917 class members). The benefit to each class member is all the more significant in that it approximates 100% of the actual damages that they would collect if they prevailed at trial. *See Gunter,* 223 F.3d at 199 n. 5 (noting it may be prudent for courts to "determine what percentage of the plaintiffs' and class members' approximated actual damages the settlement figure represents" in light of the risk of non-recovery). The settlement therefore creates a substantial benefit for a large group of class members.

### ii. Presence or Absence of Substantial Objections

 **\*20**  The Notice sent out to each class member expressly advised them that class counsel would apply for an attorney fee award in the amount of 33% of the settlement fund. It also set out the procedure for objecting to the fee request. To date, the claims administrator has received no objections— either to the settlement terms generally or to the fee request specifically. The absence of any objection weighs in favor of the fee request. *See In re Rite Aid,* 396 F.3d at 305; *In re Janney,* 2009 WL 2137224, at *14; *Chemi,* 2009 WL 1470429, at *11.

### iii. Skill and Efficiency of Class Counsel

The skill and efficiency of class counsel is "measured by 'the quality of the result achieved, the difficulties faced,

the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.' " *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 194 (E.D.Pa.2000) (quoting *In re Computron Software, Inc.,* 6 F.Supp.2d 313, 323 (D.N.J.1998)). As noted earlier, class counsel is highly experienced in complex wage-and-hour class action litigation. Based on the Court's experience in supervising this litigation, class counsel has demonstrated the utmost skill and professionalism in effectively managing these consolidated actions and bringing them to a successful conclusion. Defendants counsel are also savvy, experienced defense attorneys in wage-and-hour cases (March 4, 2011 Sweeney Decl. ¶ 9), and the ability to achieve a favorable result in a case involving such formidable defense counsel is a clear indication of the skill with which class counsel handled these cases. *See In re Elec. Carbon Prods. Antitrust Litig.,* 447 F.Supp.2d 389, 407 (D.N.J.2006). Class counsel's success in bringing this litigation to a conclusion prior to trial is another indication of the skill and efficiency of the attorneys involved. *See Gunter,* 223 F.3d at 198 (noting that the percentage method encourages early settlements by efficient counsel (citing *Manual on Complex Litigation (Third )* § 24.121, at 207 (1997))). This factor therefore weighs in favor of the fee request.

### iv. Hours Worked and Risk of Non–Payment

Courts consider the risk of non-payment in light of the Defendant's ability to satisfy an adverse judgment, *Yong Soon Oh v. AT & T Corp.,* 225 F.R.D. 142, 152 (D.N.J.2004), or the risk of establishing liability at trial, *In re Cendant Corp.,* 232 F.Supp.2d at 339. Although the Court has no reason to believe Defendant could not satisfy an adverse judgment, *supra,* class counsel faces a risk of non-payment due to the difficulty of establishing liability at trial. Class counsel has prosecuted this case on a contingent basis, with no retainer. As described above, the case poses a number of genuine factual and legal risks. Liberty presents a strong defense that, if successful, could relieve the company from any liability. In short, class counsel undertook substantial risk that the litigation would yield little or no recovery or leave them completely uncompensated for their time.

 **\*21**  Class counsel has expended over 1,800 hours in bringing this case to a favorable resolution. As reflected in the Sweeney declaration, the hours recorded were incurred investigating claims, interviewing putative class members, reviewing documents produced by Liberty, taking and

defending depositions, drafting and defending several formal motions, responding to two motions to dismiss, and engaging in extensive settlement negotiations. Given the complexity of the issues involved in this case and the activities performed to date, the hours incurred are entirely reasonable. The considerable amount of time devoted to this case, coupled with the risk of non-payment, also weighs in favor of the fee request.

*v. Awards in Similar Cases*

The requested fee is also consistent with awards in similar cases. To address this factor, the Court should (1) compare the actual award requested to awards in comparable settlements, and (2) ensure that the award is consistent with what an attorney would have likely received if the fee was negotiated on the open market. *Dewey,* 728 F.Supp.2d at 604. In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *See In re Gen. Motors,* 55 F.3d at 822 (citing *In re SmithKline Beckman Corp. Sec. Litig.,* 751 F.Supp. 525, 533 (E.D.Pa.1990)). The fee requested in this case, which represents 32.6% of the settlement fund, clearly falls within this range and is entirely consistent with fee awards for similar wage-and-hour cases in this Circuit and throughout the country. *See, e.g., Lenahan,* 2006 WL 2085282, at \*19 (thirty percent (30%)); *In re Janney,* 2009 WL 2137224, at \*16 (thirty percent (30%)); *Adeva v. Intertek USA Inc.,* No. 09–1096, ECF Entry No. 228 (D.N.J. Dec. 22, 2010) (thirty-four percent (34%)); *Bernhard,* No. 08–4392, ECF Entry No. 40 (D.N.J. Feb. 3, 2010) (thirty-three percent (33%)); *see also, e.g., Rotuna v. West Customer Mgmt. Group, LLC,* No. 09–1608, 2010 WL 2490989, at \*7–\*8 (N.D.Ohio June 15, 2010) (thirty-three percent (33%)); *Khait v. Whirlpool Corp.,* No. 06–6381, 2010 WL 2025106, at \*8 (E.D.N.Y. Jan.20 2010) (thirty-three percent (33%)); *Stefaniak v. HSBC Bank USA, N.A.,* No. 05–720, 2008 WL 7630102, at \*3 (W.D.N.Y. June 28, 2008) (thirty-three percent (33%)); *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05–3452, 2008 WL 782596, at \*5 (S.D.N.Y. Mar.24, 2008) (thirty-three percent (33%)). The percentage award in this case is also consistent with prevailing contingent fee rates in non-class action cases. *See In re Lucent Tech., Sec. Litig.,* 327 F.Supp.2d 426, 442 (D.N.J.2006) (observing "the customary contingent fee would likely range between 30% and 40% of the recovery."); *In re Ikon Office Solutions,* 194 F.R.D. at 194 (same).

*vi. Lodestar Cross-check*

Finally, the requested fee is also supported by the Lodestar cross-check. The crosscheck is performed by calculating the "lodestar multiplier." *In re AT & T Corp.,* 455 F.3d at 164. The multiplier is determined by dividing the requested fee award, determined from the percentage-of-recovery method, by the lodestar. *Id.* This figure represents "the contingent nature or risk involved in a particular case and the quality of the attorneys' work ." *In re Rite Aid,* 396 F.3d at 306 (citing *Task Force Report,* 108 F.R.D. at 243). The Third Circuit has recognized that multiples "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Prudential II,* 148 F.3d at 341 (citing 3 *Newberg on Class Actions* § 14.03, at 14–5 (3d ed.1992)). However, the Court may consider reducing the percentage-of-recovery award when the multiplier is too high. *See In re Rite Aid,* 396 F.3d at 306.

**\*22** In determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown lodestar inquiry," *In re AT & T,* 455 F.3d at 169 n. 6 (citing *In re Rite Aid Corp.,* 396 F.3d at 307 n. 16), or "mathematical precision," *In re Rite Aid Corp.,* 396 F.3d at 306–07 (citing *Prudential II,* 148 F.3d at 342). Indeed, where there have been no objections to the lodestar calculations, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Dewey,* 728 F.Supp.2d at 592–93 (citing *Weber,* 262 F.R.D. at 451 n. 10). Counsel submits that their fees as calculated under the lodestar method are $520,142.75. The fee request under the percentage of recovery method represents 1.88 times the lodestar. The Third Circuit has approved a cross-check multiplier of 3 in a "relatively simple" case that did not involve the application of several state laws or carry risks as to liability. *See In re Cendant Corp. Prides Litig. .,* 243 F.3d at 742. The 1.88 multiplier in this case is therefore quite reasonable. It is a reflection of the risks assumed by class counsel in taking the case on a contingency basis and the level of skill they bring to this complex litigation. It was through their diligence that the parties were able to reach a favorable settlement prior to dispositive motion practice. The Court therefore finds that the requested fee is also supported by the Lodestar method.

*vii. Expenses*

The Court likewise finds that class counsels' request for reimbursement of $11,646.84 in actual out-of-pocket litigation expenses is appropriate given that such expenses have been adequately documented and are reasonable based on the circumstances of this case. *See generally In re*

*Safety Components, Inc. Sec. Litig.,* 166 F.Supp.2d 72, 108 (D.N.J.2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." (citing *Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1225 (3d Cir.1995))).

### E. Service Payments to Named Plaintiffs

Class counsel also seeks incentive awards from the common fund in the amount of $10,000 for each named Plaintiff, totaling $80,000. Service payments are fairly common in class action lawsuits involving a common fund for distribution to the class. *See Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 145 (E.D.Pa.1990) (quoting *In re S. Ohio Correctional Facility,* 175 F.R.D. 270, 272 (S.D.Ohio 1997)). The purpose of these payments is to compensate named plaintiffs for "the services they provided and the risks they incurred during the course of class action litigation," *id.,* and to "reward the public service" of contributing to the enforcement of mandatory laws, *see In re Cendant,* 232 F.Supp.2d at 344 (citing *In re SmithKline Beckman Corp. Sec. Litig.,* 751 F.Supp. 525, 535 (E.D.Pa.1990)); *see also Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958–59 (9th Cir.2009) (describing utility of incentive awards). An incentive award that comes out of the payment allocated for attorneys fees need not be subject to intense scrutiny because the interests of the public and the defendants are not directly affected. *See In re Cendant,* 232 F.Supp.2d at 344 (citing *In re Presidential Life Sec.,* 857 F.Supp. 331, 337 (S.D.N.Y.1994)). Where the payments come out of the common fund independent of attorneys' fees, the Court must "carefully review" the request for fairness to other class members. *See Varacallo,* 226 F.R.D. at 257.

**\*23** Courts have ample authority to award incentive or "service" payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation. *See, e.g., In re Elec. Carbon Prods. Antitrust Litig .,* 447 F.Supp.2d at 412 ((citations omitted)); *Varacallo,* 226 F.R.D. at 258; *In re Cendant Corp.,* 232 F.Supp.2d at 327 (citing *Brotherton v. Cleveland,* 114 F.Supp.2d 907, 913 (S.D.Ohio 1991)); *see also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998) (identifying factors relevant to awarding incentive payments (citing *Spicer v. Chicago Bd. Options Exchange, Inc.,* 844 F.Supp. 1226, 1267 (N.D.Ill.1993)).

Each of the named Plaintiffs devoted considerable time and effort into the prosecution of these cases. They provided detailed information on the job duties, contacted witnesses, set up meetings between class counsel and putative class members, executed declaration that were publicly filed with the Court, produced personal documents, and relayed information to class members during the pendency of the litigation (Decl. of Michael J. Sweeney in Supp. of Pls.' Mot. for Service Payments ("Sweeney Decl. for Service Payments") ¶ 2 [CM/ECF No. 104] ). Several prepared and sat for depositions (*Id.* ¶ 3). All prepared with class counsel for settlement negotiations, and several attended the mediation sessions in person (*Id.* ¶¶ 5, 8). None of the other class members engaged in similar activity. In fact, class counsel indicates that these cases would not have been possible without the initial groundwork performed by the lead Plaintiffs (*Id.* ¶ 10). The benefits that accrue to all class members under the settlement agreement are therefore a direct result of the services rendered by named Plaintiffs. *See Cullen,* 197 F.R.D. at 146 ("[T]he assistance of the plaintiffs provided the foundation upon which this case was built."). In bringing these actions, named Plaintiffs also took on certain risks. By bringing suit against a major company in the travel business, they risk their good will and job security in the industry for the benefit of the class as a whole. *See Frank v. Eastman Kodak, Co.,* 228 F.R.D. 174, 187 (W.D.N.Y.2005) ("In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers ." (citing *Roberts v. Texaco, Inc.,* 979 F.Supp. 185, 201 (S.D.N.Y.1997))).

In addition, the service payments sought are consistent, if not lower, than awards regularly provided in similar cases. *See, e.g., Dewey,* 728 F.Supp.2d at 610 ($10,000); *In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practice Litig.,* 263 F.R.D. 226, 245 (E.D.Pa.2009) (between $5,000 and $10,000); *Mehling v. NY. Life Ins. Co.,* 248 F.R.D. 445, 467 (E.D.Pa.2008); *In re Elec. Carbon,* 447 F.Supp.2d at 412 ($12,000); *Varacallo,* 226 F.R.D. at 259 ($3,000 to $10,000 for active plaintiffs); *In re Remeron End–Payor Antitrust Litig.,* No. 02–2007, 2005 WL 2230314, at *32–*33 (D.N.J. Sept.13, 2005) ($30,000); *see also* 4 *Newberg on Class Actions* § 11.38, at 11–80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

**\*24** While the Court might normally compare the size of the service payment total to the size of the common fund in order to assess the impact of the award on other class members, it is unnecessary to do so in this case. Unlike other cases, the

settlement is distributed on a claim-by-claim basis. Under the terms of the settlement, any unused funds revert to Liberty (Settlement Agmt. § III.B.1.g). With only 41.5% of the class participating, any decrease in the service payments would revert back to Liberty rather than be distributed to the class. Moreover, not one class member has filed an objection to the service enhancements despite a clear message in the claims notice that counsel would apply for "service payments" in the amount of $10,000 for each named Plaintiff (Settlement Notice 3). Accordingly, the Court awards service payments to each of the eight (8) named Plaintiffs in the amount of $10,000 each.

### III. Conclusion

Based on the reasons set forth above, the Court: (a) certifies the state class for purposes of this settlement; (b) certifies the FLSA class for purposes of this settlement; (c) approves the proposed settlement agreement in its entirety; (d) awards class counsel the attorneys' fees and costs requested; and (e) awards the service payments requested. A separate Order accompanies this Opinion.

**End of Document**

© 2012 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1948198
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Michael CLARK, David Starkman, Franco
Desimone, and John Dinisi, individually and on
behalf all others similarly situated, Plaintiffs,
v.
ECOLAB INC., Defendant.
Troy Masson, individually and on behalf
all others similarly situated, Plaintiffs,
v.
Ecolab Inc., Defendant.
Jimmy English and William Zimmerlee, individually
and on behalf all others similarly situated, Plaintiffs,
v.
Ecolab Inc., Defendant.

Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC),
06 Civ. 5672(PAC). | May 11, 2010.

Opinion

PAC ORDER GRANTING PLAINTIFFS'
MOTION FOR CERTIFICATION OF THE
SETTLEMENT CLASS, FINAL APPROVAL
OF THE CLASS SETTLEMENT, AND
APPROVAL OF THE FLSA SETTLEMENT

PAUL A. CROTTY, District Judge.

 *1  The parties' proposed settlement resolves all claims in
three separately filed federal overtime lawsuits, Clark v.
Ecolab Inc., No. 07 Civ. 8623 (the "Clark Case" ); English
v. Ecolab, Inc., No. 06 Civ. 5672, appeal docketed, No.
08-1812-cv (2d Cir. Apr. 16, 2008) (the "English Case" );
and Masson v. Ecolab, Inc., No. 04 Civ. 4488 (the "Masson
Case" ) (collectively the "Litigation").

Litigation Background

On June 15, 2004, Plaintiff Troy Masson filed a collective
action Complaint pursuant to 29 U.S.C. § 216(b) in the
U.S. District Court for the Southern District of New York,

asserting violations of the FLSA. Masson was a former
"Route Manager" or "Route Sales Manager" (hereinafter
"RSM") in Ecolab's Institutional Division. He alleged that he
and similarly situated RSMs were misclassified as exempt
employees under the FLSA, and he sought recovery of
overtime wages, attorneys' fees and costs, and liquidated
damages. (Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for
Final Approval ("Swartz Decl.") ¶ 5.)

Ecolab filed its Answer to the Masson Case, disputing the
material allegations and denying any liability in the proposed
collective action. Ecolab asserted, among other defenses, that
RSMs were "exempt" from receiving overtime pay. (Swartz
Decl. ¶ 6.)

On March 2, 2005, Masson filed a Motion to Approve
Collective Action Notice. On April 18, 2005, Ecolab filed
a Motion for Summary Judgment. In an Opinion and Order
dated August 17, 2005 and modified on August 29, 2005,
the Court granted Masson's Motion to Approve Collective
Action Notice and denied Ecolab's Motion for Summary
Judgment. See Masson v. Ecolab, Inc., 04 Civ. 4488, 2005
U.S. Dist. LEXIS 18022, 2005 WL 2000133 (S.D.N.Y.
Aug. 17, 2005). Nationwide notice in the Masson Case was
mailed on September 28, 2005 to approximately 1,200 RSMs.
(Swartz Decl. ¶¶ 7-8.)

On July 27, 2006, Plaintiff-Appellant Jimmy English filed a
collective action Complaint pursuant to 29 U.S.C. § 216(b)
in the U.S. District Court for the Southern District of
New York, asserting violations of the FLSA. An Amended
Complaint was later filed adding William Zimmerlee as
a named plaintiff. Plaintiffs English and Zimmerlee were
employed in Ecolab's Pest Elimination Division as Pest
Elimination Service Specialists or Senior Pest Elimination
Service Specialists (hereinafter "Pest Service Specialists").
Plaintiffs English and Zimmerlee alleged that they and
similarly situated Pest Service Specialists were misclassified
as exempt employees under the FLSA, and they sought
recovery of overtime wages, attorneys' fees and costs, and
liquidated damages, among other things. (Swartz Decl. ¶ 9.)

Ecolab filed its Answer and Amended Answer to the English
Case, disputing the material allegations and denying any
liability in the proposed collective action. In its Answer,
Ecolab asserted, among other defenses, that Pest Service
Specialists were "exempt" from receiving overtime pay.
(Swartz Decl. ¶ 10.)

 *2  On November 15, 2006, Plaintiffs filed a Motion to
Conditionally Certify a FLSA Collective Action. On July 20,

2007, the parties filed cross-motions for summary judgment. On March 28, 2008, the Court issued an Opinion and Order granting Ecolab's motion for summary judgment and denying Plaintiffs' cross-motion. See English v. Ecolab, Inc., No. 06 Civ. 5672, 2008 U.S. Dist. LEXIS 25862, 2008 WL 878456 (S.D.N.Y. Mar. 28, as amended March 31, 2008). The Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action was denied as moot. See English, 2008 U.S. Dist. LEXIS 25862, at *55, 2008 WL 878456. A Final Judgment closing the case was entered on April 3, 2008. (Swartz Decl. ¶ 11.)

On April 16, 2008, Plaintiffs appealed the Final Judgment to the Court of Appeals for the Second Circuit (the "English Appeal" ).

On October 4, 2007, Michael Clark filed a lawsuit alleging a nationwide FLSA collective action and a Rule 23 class action on behalf of putative class members in California. On December 4, 2007, Plaintiff Clark, Franco DeSimone, David Starkman, and John Dinisi filed an Amended Complaint and also alleged a Rule 23 class action on behalf of putative class members in New York, Washington, and Oregon. Plaintiffs Clark and DeSimone were both employed as Territory Representatives ("TRs") for a wholly owned subsidiary of Ecolab, Kay Chemical Company. Plaintiffs Dinisi and Starkman were both employed as RSMs in Ecolab's Institutional Division, the same position at issue in the Masson Case. (Swartz Decl. ¶ 13.)

Ecolab's Answer in the Clark Case disputes the material allegations and denies liability. It also asserts, among other defenses, that the positions in question are "exempt" from FLSA and state law coverage. (Swartz Decl. ¶ 15.)

In December 2007, Ecolab brought a motion to transfer venue, and to sever the RSM plaintiffs and consolidate their claims in the Masson Case. (Swartz Decl. ¶ 14.) The Honorable Derrise Cote denied the motion without prejudice to renewal and the case was reassigned to this Court. (Swartz Decl. ¶ 14.)

Settlement Negotiations and Preliminary Approval

Over the course of approximately six years of litigation, the parties unsuccessfully engaged in informal settlement negotiations several times. (Swartz Decl. ¶ 28.) In early 2009, the parties agreed to attempt to resolve the Litigation through non-binding private mediation with an experienced class action mediator, Hunter Hughes of Rogers & Hardin LLP, Atlanta, Georgia. The parties agreed on the terms

of a settlement, which were memorialized in a formal Joint Stipulation of Settlement and Release (the "Settlement Agreement"). Without conceding the validity of Plaintiffs' claims and without admitting liability, Ecolab agreed, among other things, to create a Settlement Fund (the "Fund") of $6,000,000 to resolve the Litigation. (Swartz Decl. ¶¶ 30, 32.)

On November 17, 2009, this Court entered an Order preliminary approving the settlement; provisionally certifying the settlement class; appointing Outten & Golden LLP and Getman & Sweeney, PLLC as Class Counsel; approving Plaintiffs' proposed notice of settlement, and granting other relief. Clark v. Ecolab Inc., No. 07 Civ. 8623, et al., 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009).

 *3  On January 5, 2010 and February 4, 2010, Settlement Services, Inc ., the Claims Administrator, sent the Notices to all 519 Class Members informing them of their right to opt out or object to the settlement and of Class Counsel's intention to seek service awards of $10,000 for each of the named plaintiffs, up to 35% of the Fund for attorneys' fees, and their out-of-pocket expenses. (Swartz Decl. ¶¶ 55-56; Ex. D ("Notices"); Ex. E ("Patton Decl.") ¶¶ 5-7.)

On April 27, 2010, Plaintiffs filed their Motion for Certification of the Settlement Class, Final Approval of the Class Settlement, and Approval of the FLSA Settlement. In that Motion, Plaintiffs also requested modification of the Endorsement-release language to be used with the settlement checks, and approval of an individual settlement that will not impact the Fund. ("Motion for Final Approval"). The same day, Plaintiffs also filed Unopposed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Awards ("Motion for Service Awards"). Eeolab took no position with respect to any of these motions.

The Court held a fairness hearing on May 11, 2010. No Class Member objected to the settlement, the service awards, or Class Counsel's request for fees and costs, and only one Class Member requested exclusion.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, the Motion for Service Awards, the supporting declarations, the oral argument presented at the May 11, 2010 fairness hearing, and the complete record in this matter, for good cause shown,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

Certification Of The Settlement Class

1. The Court certifies the following classes under Federal Rule of Civil Procedure 23(e), for settlement purposes:

(A) California Class: all individuals who were employed by Ecolab as RSMs in the State of California from October 4, 2003 to July 6, 2009;

(B) New York Class: all individuals who were employed by Ecolab as RSMs in the State of New York from December 4, 2001 to July 6, 2009;

(C) Oregon Class: all individuals who were employed by Ecolab as RSMs in the State of Oregon from December 4, 2004 to July 6, 2009; and

(D) Washington Class: all individuals who were employed by Ecolab as RSMs in the State of Washington from December 4, 2004 to July 6, 2009.

2. Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) (3).

3. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1), numerosity, because there are approximately 345 state Class Members. (Swartz Decl. ¶ 55.) Thus, joinder is impracticable. See Consol Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.1995) ("[N]umerosity is presumed at a level of 40 members.")

4. The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. All Class Members bring the identical claim that Ecolab allegedly failed to pay them earned overtime wages in violation of state wage and hour laws. Other common issues include, but are not limited to, (a) whether Plaintiffs and the state settlement Class Members were exempt from overtime eligibility during the class period; (b) whether Ecolab failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and (c) whether Ecolab maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked. See Westerfield v. Washington Mut. Bank, No. 06 Civ. 2817, et al., 2009 U.S. Dist. LEXIS 54553, at *6-7 (E.D.N.Y. Jun. 26, 2009).

 *4  5. Named Plaintiffs satisfy Federal Rule of Civil Procedure 23(a) (3), typicality, because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. See Damassia, 250

F.R.D. at 158 (finding typicality satisfied where plaintiffs' claims were based on the same course of events and legal theory as class members' claims).

6. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4), adequacy, because Plaintiffs' interests are not antagonistic or at odds with those of Class Members, see McMahon v. Olivier Cheng Catering and Events, LLC, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913, at *5-6 (S.D.N.Y. Mar. 3, 2010); Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *11, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009); and because Class Counsel "has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area," Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at *11-12, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) (internal quotation marks and citation omitted)).

7. Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b) (3). Here, all Class Members are unified by common factual allegations and a common legal theory. These common questions predominate over any factual or legal variations among Class Members. See Khait v. Whirlpool Corp., No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067, at *9-10, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).

8. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually. See Mohney, 2009 U.S. Dist. LEXIS 27899, at *12; 2009 WL 5851465 Damassia, 250 F.R.D. at 161, 164.

Approval Of The Settlement Agreement

9. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

10. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed.R.Civ.P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir.2005); D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir.2001). To determine substantive fairness, Courts determine whether the settlement's terms are fair, adequate, and reasonable

according to the factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir.1974).

11. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. Wal-Mart Stores, 396 F.3d at 116; see also Spann v. AOL Time Warner, Inc., No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *18, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12, 2007 WL 2230177 (S.D.N.Y. July 27, 2007). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." McMahon, 2010 U.S. Dist. LEXIS 18913, at *9-10 (citation omitted). The Court gives weight to the parties' judgment that the settlement is fair and reasonable. See Reyes, 2009 U.S. Dist. LEXIS 45277, at *9; 2009 WL 5841177 Mohney, 2009 U.S. Dist. LEXIS 27899, at *13, 2009 WL 5851465.

Procedural Fairness

 *5  12. The settlement is procedurally fair, reasonable, adequate, and not aproduct of collusion. See Fed.R.Civ.P. 23(e); Frank, 228 F.R.D. at 184 (citing Joel A. v. Giuliani, 218 F.3d 132, 138-39 (2d Cir.2000)). The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after extensive negotiations between the parties. Plaintiffs interviewed hundreds of workers (including RSMs, Pest Service Specialists, Institutional Division Territory Managers, and TRs) to determine the hours that they worked, the wages they were paid, their job duties, and other information relevant to their claims; obtained supportive declarations from putative class members; took 5 depositions pursuant to Federal Rule of Civil Procedure 30(b)(6); and defended 25 depositions of opt-in plaintiffs. (Swartz Decl. ¶¶ 17-23.)

13. Plaintiffs also obtained, reviewed, and analyzed thousands of pages of hard-copy documents and electronically-stored data including, but not limited to, time and payroll records, human resources data, financial records, sales data, marketing materials, and employee lists. Ecolab served discovery requests on Plaintiffs, and in response Plaintiffs produced documents including, but not limited to, W-2s, earning statements, pay stubs, and payroll forms. During the discovery phase of the Litigation, the parties engaged in numerous discovery disputes which required court intervention. (Swartz Decl. ¶¶ 24-26.)

14. To help resolve the case, the parties enlisted the services of experienced class action mediator Hunter Hughes of Rogers & Hardin LLP in Atlanta, Georgia. (Swartz Decl. ¶ 28.) Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process. Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, at *10, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010); Mohney, 2009 U.S. Dist. LEXIS 27899, at *13, 2009 WL 5851465.

Substantive Fairness

15. The settlement is substantively fair. All of the factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir.1974), which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

16. The "Grinnell factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Grinnell, 495 F.2d at 463.

 *6  17. Litigation through trial would be complex, expensive, and long. Therefore, the first Grinnell factor weighs in favor of final approval.

18. The class's reaction to the settlement was positive. The Notices included an explanation of the allocation formula and estimates each Class Member's award. (Swartz Decl. Ex. D (Notices).) The Notices also informed Class Members that they could object to or exclude themselves from the settlement, and explained how to do so. (Swartz Decl. ¶ 56, Ex. D (Notices).) No Class Member objected to the Settlement, and only one requested exclusion. (Swartz Decl. ¶ 56.) This favorable response demonstrates that the Class approves of the results, which supports final approval. Wright

v. Stern, 553 F.Supp.2d 337, 344-45 (S.D.N.Y.2008) (where 13 out of 3,500 class members objected and 3 opted-out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

19. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." McMahon, 2010 U.S. Dist. LEXIS 18913, at *12 (citation omitted). Here, the parties engaged in aggressive discovery efforts, obtaining voluminous amounts of documents and taking numerous depositions. The resulting discovery allowed them to evaluate adequately the strengths and weaknesses of the case. (Swartz Decl. ¶ 16.) The third Grinnell factor thus weighs in favor of final approval.

20. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y.1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. In re Ira Haupt & Co., 304 F.Supp. 917, 934 (S.D.N.Y.1969). Here, the fact-intensive nature of Plaintiffs' claims and Ecolab's affirmative defenses presents risk. The settlement eliminates this uncertainty. The fourth Grinnell factor weighs in favor of final approval.

21. The risk of maintaining class status throughout trial also weighs in favor of final approval. A contested class certification motion would likely require extensive discovery and briefing. If the Court granted a contested class certification motion, Ecolab could seek to file a Federal Rule of Civil Procedure 23(f) appeal and/or move to decertify, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The fifth Grinnell factor weighs in favor of final approval.

22. Although Ecolab's ability to withstand a greater judgment is not currently at issue, this factor is not determinative. See Frank, 228 F.R.D. at 186 ("[D]efendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.") (quoting In re Austrian & German Bank Holocaust Litig., 80 F.Supp.2d 164, 178 n. 9 (S.D.N.Y.2000)).

*7 23. The substantial amount of the settlement weighs strongly in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a

particularized sum.' " Frank, 228 F.R.D. at 186 (quoting In re Austrian, 80 F.Supp.2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement-a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.' " Id. (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir.1972)). The seventh Grinnell factor favors final approval.

Approval Of The FLSA Settlement

24. The Court hereby approves the FLSA settlement.

25. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. McMahon, 2010 U.S. Dist. LEXIS 18913, at *15. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n. 8 (11th Cir.1982); McMahon, 2010 U.S. Dist. LEXIS 18913, at *15. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. Lynn's Food Stores, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. Id. at 1354; McMahon, 2010 U .S. Dist. LEXIS 18913, at *16; Mohney, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465 at*13.

26. The FLSA settlement meets the standard for approval. The settlement was the result of contested litigation and arm's length negotiation. Recognizing the uncertain legal and factual issues involved, the parties engaged in mediation with an experienced mediator and, after numerous rounds of negotiation, ultimately reached the settlement pending before the Court. During the litigation and at the mediation, Plaintiffs and Ecolab were both represented by counsel.

Dissemination of Notice

27. Pursuant to the Preliminary Approval Order, the Notices were sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of returned Notices). (Swartz Decl. Ex. E ("Patton Decl.") ¶¶ 5-7.) This Court finds that the Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted on May 4, 2010. Class Members were provided the best notice practicable under the circumstances.

28. The Court further finds that the Notices and distribution of such Notices comported with all constitutional requirements, including those of due process.

*8  29. The Court confirms Settlement Services, Inc. ("SSI") as the Claims Administrator.

30. The Court approves the modification of the Endorsement-release language to the following:

> By endorsing this settlement check, I agree to the full and final release of federal and state wage and hour claims, and derivative claims, as set forth more fully in the Settlement Agreement and Notice.

Award of Fees and Costs to Class Counsel and Award of Service Payments to Named Plaintiffs

31. On November 17, 2009, the Court appointed Outten & Golden LLP and Getman & Sweeney, PLLC as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

32. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

33. Class Counsel are experienced class action employment lawyers and have extensive experience prosecuting and settling wage and hour class actions. See, e.g., Mohney, 2009 U.S. Dist. LEXIS 27899, at *15, 2009 WL 5851465 ("O & G's lawyers have substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law."); Westerfield v. Washington Mut. Bank, No. 06 Civ. 2817, No. 08 Civ. 287, 2009 U.S. Dist. LEXIS 94544, at *12-13 (E.D.N.Y. Oct. 2, 2009) (O & G lawyers "have substantial experience prosecuting and settling ... wage and hour class actions....").

34. The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

35. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel attorneys' fees of $2,000,000, or one-third of the Fund.

36. In this Circuit, the "percentage-of-recovery" method is the "trend." McDaniel v. County of Schenectady, 595 F.3d 411,

417 (2d Cir.2010); Wal-Mart Stores, Inc., 396 F.3d at 122; see also Mohney, 2009 U.S. Dist. LEXIS 27899, at *16, 2009 WL 5851465.

37. The Court has discretion to award attorneys fees based on the lodestar method or the percentage-of-recovery method, McDaniel, 595 F.3d at 417.

38. Class Counsel's request for one-third of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." See Gilliam v. Addicts Rehab. Ctr. Fund, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) (granting one-third of the settlement fund); Khait, 2010 U .S. Dist. LEXIS 4067, at *4, 2010 WL 2025106 23-25 (awarding 33% of $9.25 million fund in FLSA and NYLL case); Reyes, 2009 U.S. Dist. LEXIS 45277, at *2-3, 11, 2009 WL 5841177 (awarding 33% of $710,000 fund in FLSA and NYLL tip misappropriation case); Mohney, 2009 U.S. Dist. LEXIS 27899, at * 13, 16-17, 2009 WL 5851465 (awarding 33% of $3,265,000 fund in FLSA and NYLL case); Stefanvia v. HSBC Bank USA, N.A., No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872, at *9, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); see also Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 370 (S.D.N.Y.2002) (awarding 33 1/3% fee on fund valued at $11.5 million in securities class action); Cohen v. Apache Corp., No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at *1, 1993 WL 126560 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund in securities class action).

*9  39. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. (Decl. of Justin M. Swartz in Supp. of Pls.' Unopposed Mot. for Approval of Attys' Fees and Reimbursement of Expenses and Unopposed Mot. for Class Representative Service Awards ("Swartz Fees/Awards Decl.") ¶¶ 11-12.) A percentage-of-recovery fee award of one-third is consistent with the Second Circuit's decision in Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay, 493 F.3d 110, 111-12 (2d Cir.2007). An award of one-third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases. (Swartz Fees/Awards Decl. ¶ 8.) While Arbor Hill is not controlling here because it does not address a common fund fee petition, it supports a one-third recovery in a case like this one where Class Counsel's fee entitlement is entirely

contingent upon success. McMahon, 2010 U.S. Dist. LEXIS 18913, at *21.

40. All of the factors in Goldberger weigh in favor of a fee award of one-third of the Fund.

41. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, (see Swartz Fees/Awards Decl. ¶ 10), also supports their fee request, see McMahon, 2010 U.S. Dist. LEXIS 18913, at *22-23.

42. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $62,591.89, which the Court deems to be reasonable. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. See In re Indep. Energy Holdings PLC Sec. Litig., 302 F.Supp.2d 180, 183 n. 3 (S.D.N.Y.2003) (citing Miltland Raleigh-Durham v. Myers, 840 F.Supp. 235, 239 (S.D.N.Y.1993)).

43. The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the Settlement Fund.

44. The Court finds reasonable service awards of $10,000 each to Class Representatives Troy Masson, Jimmy English, William Zimmerlee, Michael Clark, David Starkman, Franco DeSimone, and Jolm Dinisi. These amounts shall be paid from the Settlement Fund.

45. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff. Khait, 2010 U.S. Dist. LEXIS 4067, at *26-27, 2010 WL 2025106 (awarding $15,000 service awards each to 5 named plaintiffs and $10,000 service awards each to 10 named plaintiffs); Mohney, 2009 U.S. Dist. LEXTS 27899, at *18-19 (awarding $6,000 service awards each to 14 named plaintiffs); see Nantiya Ruan, Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregating claims to protecting civil rights and wage and hour rights).

CONCLUSION

*10 46. Within three (3) business days of this Order, Ecolab shall submit the Settlement Amount to the Claims Administrator to establish the Fund.

47. The Claims Administrator shall distribute Settlement Checks from the QSF to the Class Members as described in the Settlement Agreement, except that the Endorsement-release language shall be modified as proposed by The parties.

48. The Claims Administrator shall also pay to Class Counsel attorneys' fees of $2,000,000 and costs of $62,591.89 from the Fund.

49. The Claims Administrator's fee of $31,000 shall be paid from the Fund.

50. The Claims Administrator shall also pay $10,000 each to Class Representatives Troy Masson, Jimmy English, William Zimmerlee, Michael Clark, David Starkman, Franco DeSimone, and John Dinisi as a service award described in the Settlement Agreement.

51. The Claims Administrator shall satisfy the employer obligations to pay all employer taxes and withholdings on the Settlement Checks from the Fund.

52. The Claims Administrator shall further (1) provide verification to Class Counsel and Ecolab's Counsel that it has distributed the Settlement Checks, (2) retain copies of all the endorsed Settlement Checks with releases, and (3) provide Ecolab's Counsel with the original of the endorsed Settlement Checks in accordance with the Settlement Agreement.

53. All claims asserted in the Litigation and the claims of all Class Member who have not opted out are hereby dismissed with prejudice, subject only to an application for relief under Federal Rule of Civil Procedure 60(b)(1) or 60(d).

54. The Court approves the Individual Settlement reached by the parties, which shall have no impact on the Fund.

55. The Clerk of Court is directed to enter Final Judgment in these actions.

56. The Court retains jurisdiction over this action thirty (30) days after the Acceptance Period, as necessary for the administrative purposes.

57. The parties shall abide by all terms of the Settlement Agreement and this Order.

It is so ORDERED.

**End of Document**                                                                  © 2012 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1176641
Only the Westlaw citation is currently available.
United States District Court,
D. Maryland,
Northern Division.

Earl Edward HOFFMAN, Sr., et al., Plaintiffs,

v.

FIRST STUDENT, INC., Defendant.

Civil No. WDQ-06-1882. | March 23, 2010.

Opinion

MEMORANDUM OPINION

WILLIAM D. QUARLES, JR, District Judge.

*1 A class of more than 750 school bus drivers, aides, and others sued First Student for violating the Fair Labor Standards Act ("FLSA") [1] and comparable Maryland labor laws [2] by failing to pay straight and overtime wages from June 2003. Pending is the parties' joint motion to approve the class-wide settlement. For the following reasons, the proposed settlement will be approved.

[1]   29 U.S.C. §§ 201 et seq.

[2]   Maryland Wage & Hour Law, Md.Code Ann., Lab. & Empl. §§ 3-401, et seq.; Maryland Wage Payment & Collection Act, Md.Code Ann., Lab. & Empl. §§ 3-501 et seq.

I. Background

The Plaintiffs alleged that, when calculating overtime, First Student did not aggregate time appropriately; e.g., an employee who drove a bus for 30 hours and trained other drivers for 20 hours in a week only received pay for 50-hours with no overtime. Paper No. 80 at 2. The Plaintiffs also alleged that First Student failed to pay overtime to charter drivers and the safety and attendance bonuses, and provided inadequate pay for non-driving tasks. Id.

The Court certified the Plaintiffs' FLSA claims as a collective action, Paper No. 33, and certified the Maryland labor claims as a class action under Fed.R.Civ.P. 23, Paper No. 81. On January 6, 2010, the parties notified this Court that they had reached a proposed settlement. Id. Under the terms of that settlement, the Plaintiffs would receive $1.55 million

(inclusive of attorneys' fees and expenses) in exchange for releasing their claims against First Student. Paper No. 107, Ex. A ¶ 9. [3] From that award, Plaintiffs' counsel seeks $497,666 in attorneys' fees and $57,000 in litigation expenses. Id. ¶ 11(g). The proposed settlement also awards the seven lead plaintiffs a supplemental "service payment" of $3,000 to compensate for time spent meeting with counsel to explain their work and First Student's pay practices. Id. at 5.

[3]   Unclaimed funds will be donated to the Children's Miracle Network. Paper No. 107 at 2.

On January 27, 2010, the parties filed a joint motion to approve the class-wide settlement. Paper No. 107. On January 28, 2010, the Court (1) preliminarily approved the proposed settlement, (2) approved the Notice of Proposed Settlement and ordered that it be sent to all class members by first-class mail, and (3) scheduled a fairness hearing to allow any class member to object to the settlement or opt out of the class. Paper No. 108. On March 19, 2010 at 2:00pm, the Court held the fairness hearing.

II. Analysis

A. Standard of Review

1. Rule 23(e)

Before approving a settlement in a certified class action, the court must evaluate its procedural and substantive fairness. Fed.R.Civ.P. 23(e). To ensure procedural fairness, Rule 23(e) requires: (1) court-approved notice to all class members bound by the proposed settlement, (2) a hearing to determine whether the proposal is "fair, reasonable, and adequate," (3) the parties' statement specifying their agreement, and (4) an opportunity for class members to object. Id. [4] "The primary concern addressed by Rule 23(e) is the protection of class members whose rights might not have been given adequate consideration during the settlement negotiations ." In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir.1991).

[4]   The court may refuse approval if a proposed settlement does not allow individual class members to request exclusion, even if class members had and declined an earlier opportunity for exclusion. Fed.R.Civ.P. 23(e) (5). An objection may be withdrawn only with leave of court. Id. This proposed settlement does contain an "opt-out" provision for prospective beneficiaries. Paper No. 107, Ex. 3 ¶ 16.

*2 There is a "strong presumption in favor of finding a settlement fair." Lomascolo v. Parsons Brinkerhoff, Inc.,

2009 WL 3094955, at *10 (E.D.Va. Sept.28, 2009) (internal quotation omitted). [5] Because a settlement hearing is not a trial, the court's role is more "balancing of likelihoods rather than an actual determination of the facts and law in passing upon ... the proposed settlement ." Id. at 1173.

[5] To determine whether the proposed terms are reasonable, adequate, and fair, the court should consider (1) the extent of discovery that has occurred; (2) the stage of proceedings, including the complexity, expense and likely duration of litigation; (3) evidence of bad faith or collusion in the settlement; (4) the experience of plaintiffs' counsel; (5) the opinions of class counsel and class members after receiving notice of the settlement-expressed directly or through failure to object; and (6) the plaintiffs' probability of success on the merits and the amount of settlement compared with the potential recovery. Flinn v. FMC Corp., 528 F.2d 1169, 1173-74 (4th Cir.1975); see also Jiffy Lube, 927 F.2d at 158-59; Lomascolo, 2009 WL 3094955 at *11.

2. FLSA Collective Action

FLSA settlements also must be approved by the court. See Lynn's Food Stores v. United States, 679 F.2d 1350, 1355 (11th Cir.1982). Although "the Fourth Circuit has not directly addressed the factors to consider in determining whether an [FLSA class settlement] ... is fair and reasonable, various federal courts have analogized to the fairness factors generally considered for court approval of class action settlements" under Rule 23(e). See Lomascolo, 2009 WL 3094955 at *11. At the least, the Court must confirm that the collective action device has not been abused and that the absent putative class members will not suffer prejudice under the proposed settlement. See Shelton v. Pargo, Inc., 582 F.2d 1298, 1306 (4th Cir.1978).

B. Fairness of the Settlement Agreement

1. Procedural Fairness

As required by Rule 23(e), Plaintiffs' counsel sent court-approved Notice of Proposed Settlement and the Class Member Information Form to all class members, Paper No. 110, [6] and filed the settlement agreement and memorandum describing it, Paper No. 107. On March 19, 2010, the Court held a fairness hearing; one class member, Ms. Leslie Langley, who had considered objecting, appeared to state her support for the proposed settlement. No other class member objected to the proposal, and no class member opted out of the class. Paper No. 110 ¶¶ 2-3. As the parties have complied

with Rule 23(e), the proposed settlement meets the procedural requirements for fairness.

[6] The Plaintiffs' counsel were unable to reach 57 of the more than 750 class members because of the lack of addresses. Paper No. 110 ¶ 5. At the hearing, Plaintiffs' counsel represented that the number of unreached class members was between 20 and 30.

2. Substantive Fairness

a. Damages Are Adequate, Reasonable, Adequate, and Fair

The record shows that (1) there has been extensive discovery, assuring sufficient development of the facts to permit an accurate assessment of the merits of the case; (2) shortly before this case was referred for settlement negotiations, the Court's decision on the cross-motions for summary judgment clarified the issues for trial; (3) there is no evidence of bad faith or collusion in the settlement; (4) the Court previously found that the Plaintiffs' counsel would adequately represent the class; [7] (5) no class member has objected to the proposed settlement [8] and the parties' counsel attest to the fairness of this proposal in their joint motion to approve the class-wide settlement; [9] and (6) the Plaintiffs estimated their claims to be worth about $2.3 million but were "uncertain" what would result from a jury trial and thus have "traded off the risk of nonsuccess" for certain, immediate recovery. [10] Accordingly, the proposed settlement terms appear to be reasonable, adequate, and fair.

[7] Paper No. 80 at 10 (evaluating competence of counsel to represent the plaintiffs for purposes of class certification).

[8] Paper No. 110 ¶ 3.

[9] Paper No. 107 at 2.

[10] Paper No. 107 at 2-3.

b. Litigation Expense & Attorneys' Fees

*3 If requested by the prevailing plaintiff in an FLSA case, the court "shall ... allow a reasonable attorney's fee to be paid by the defendant [ ] and the cost of the action." 29 U.S.C. § 216(b). The Agreement for Legal Services entered by the lead class members also provided that counsel for the prevailing parties would receive the greater of (a) "reasonable compensation" plus expenses and costs for their services or (b) one-third of the total recovery. Paper No. 107, Ex. 10 ¶ 4.

The Plaintiffs have estimated their litigation expenses at $59,250 [11] and their legal fees at $685,000 for over 2,900 hours of work since this case began in April 2006. Paper No. 107 at 4. The Plaintiffs' counsel is seeking to recover, under the second option of the Agreement, approximately $500,000 in costs and attorneys' fees. Id. Under the FLSA and the terms of the lead class members' Agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award. Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, the fees and costs requested are reasonable and appropriate.

[11]    Though the Settlement Agreement estimates Plaintiffs' costs at $57,000, Plaintiffs' counsel represented at the March 19, 2010 hearing that final litigation expenses were actually $59,250.

c. Supplemental Award othe Seven Lead Plaintiff

As part of a class action settlement, "named plaintiffs ... are eligible for reasonable incentive payments." Stanton v. Boeign Co., 327 F.3d 938, 977 (9th Cir.2003). [12] To determine whether an incentive payment is warranted, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook, 142 F.3d at 1016.

[12]    "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." Cook v. Niedert, 142 F.3d 1004 (7th Cir.1998).

The proposed settlement awards a $3,000 "service payment," which is independent of the back-pay and damages awarded, to Earl Hoffman, Wayne Gerry, Melanie Willner, Carl King, Tina Himes, Rose Marie Sandlin, and Yolanda Davis-the seven "lead" plaintiffs in this class/collective action. Paper 107 at 4-5. This payment is intended to compensate them for their (1) time spent providing counsel with information needed to pursue this litigation, (2) participation in the December 2007 mediation, and (3) time spent in-and preparing for-depositions by First Student. Id. at 5. Because a $3,000 award is commensurate with the effort expended by the named plaintiffs and a substantial award benefitting all class members was obtained, the incentive payment is appropriate.

III. Conclusion

For the reasons stated above, the joint motion to approve the class-wide settlement will be granted.

End of Document                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.